Michael **TELLIS**, Plaintiff,

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, et al.,**
Defendants.

No. 83 C 3557.

United States District Court,
N.D. Illinois, E.D.

Sept. 6, 1985.

Gerald C. Risner, Martin T. Langan, Chicago, Ill., for plaintiff.

Michael J. Gibbons, Kralovec, Marquard, Doyle & Gibbons, Chicago, Ill., for defendants.

Jeffrey Singer, William F. Mahoney, Epton, Mullin, Segal & Druth, Chicago, Ill., for U.S. Fidelity and Guar. Co.

## MEMORANDUM OPINION

GRADY, District Judge.

This case is before us on the defendants' motions to dismiss plaintiff's first amended complaint, or to strike certain portions of the complaint. The complaint consists of three counts, all based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). The plaintiff, Michael Tellis, claims that the defendants, his former employer Parker House Sausage Co. ("Parker"), and Parker's insurer, United States Fidelity & Guaranty Co. ("USF & G"), perpetrated a fraud upon him and the Illinois Industrial Commission ("IIC") when they falsely stated to the IIC that plaintiff would be returned to light duty work at Parker. In reliance upon this allegedly false statement made at a hearing before the IIC, plaintiff claims that he and the IIC accepted a settlement for plaintiff's worker's compensation claim against Parker which would not have been accepted absent the misrepresentation.

We originally dismissed this claim pursuant to Fed.R.Civ.P. 12(b)(6) because plaintiff did not allege two mailings in furtherance of the alleged scheme to defraud. *Tellis v. United States Fidelity & Guaranty Co.,* No. 83 C 3557, Memorandum Op. (N.D.Ill. Jan. 10, 1985). Plaintiff has amended his complaint to add other mailings which he states were made in furtherance of the scheme. Defendants claim that the new mailings do not remedy the claim's infirmities, and also renew arguments previously raised which we did not address in our first opinion.

Because we believe that plaintiff has corrected the infirmities of his original complaint upon which we based our first opinion,[1] we must now rule upon one of the

---

1. Plaintiff's amended complaint does allege at least two mailings in furtherance of a scheme to defraud. We have already held that one mailing alleged in the original complaint and realleged here, the mailing of plaintiff's check, can form the basis of a mail fraud claim, since the alleged scheme did not reach fruition until he received his money. *Tellis,* Memorandum Op. at 3; *see United States v. Maze,* 414 U.S. 395, 403, 94 S.Ct. 645, 650, 38 L.Ed.2d 603 (1973). In his amended complaint, plaintiff added several other mailings preceding the date the check was mailed. At least one of these mailings, notice to plaintiff to attend the IIC hearing, is sufficiently related to the alleged scheme to form the basis of another mail fraud claim. Parker argues that this notice mailing is too "tenuous" to support a mail fraud charge. Memorandum in Support of Motion to Dismiss Amended Complaint at 5. In order to form the basis of a mail fraud action, however, a mailing need only be made for the purpose of executing the scheme to defraud. The mailing itself need not be essential to the scheme. *United States v. Clark,* 649 F.2d 534, 540 (7th Cir.1981). All that is required is that the mailing be a "natural concomitant of a transaction that is essential to the

defendants' previous arguments, which presents a difficult preemption issue. Defendants argue that plaintiff's RICO claim is barred by the exclusivity clauses of Illinois' Worker's Compensation Act, Ill.Rev. Stat. ch. 48, § 138.1 *et seq.* Pertinent portions of the Act state that "no common law or statutory rights to recover damages ... other than the compensation herein provided, is available to any employee who is covered by the provisions of this Act"; in any case where "there has been any unreasonable underpayment of compensation ... then the commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award"; and whenever the IIC finds that the employer or insurer "has been guilty of delay or unfairness towards an employee in the adjustment, settlement, or payment of benefits ... or has been guilty of unreasonable or vexatious delay, [or] intentional underpayment of compensation benefits ... within the purview of the provisions of paragraph 19 of this Act," it may assess all or part of the attorney's fees and costs against the employer or insurer. Ill.Rev. Stat. ch. 48, §§ 138.5(a), 138.19(k), 138.16.

The Illinois Supreme Court has construed these paragraphs to bar an independent state cause of action by an employee for intentional infliction of emotional distress based upon his employer's conduct in handling his worker's compensation claim. *Robertson v. Traveler's Insurance Co.,* 95 Ill.2d 441, 69 Ill.Dec. 954, 448 N.E.2d 866 (1983). The Court stated that since the employee had an opportunity to seek the statutory penalties contained in §§ 138.-19(k) and 138.16, he cannot recover for delay in an action at common law:

To permit such a course would invite the indefinite prolonging of litigation and risk double recoveries and inconsistent findings of fact, a result which the legislature, in enacting a system of compensation in place of common law remedies, certainly wished to avoid.

*Id.* at 451, 69 Ill.Dec. at 959, 448 N.E.2d at 871. *See also Hicks v. Board of Education for School District 189,* 177 Ill. App.3d 974, 33 Ill.Dec. 683, 397 N.E.2d 16 (5th Dist.1979) (exclusive remedy for malicious delay is complaint to IIC pursuant to § 138.19(k)).

Defendants argue that under the above-cited sections of the Act, plaintiff should have returned to the IIC with his charges, reopened his claim, and received his statutory penalties, if merited. Under the exclusivity clauses of the Act, his only remedy is with the IIC.

We agree that under the Act, plaintiff's suit is barred. The Act states that no statutory right to damages is available to an employee covered by the Act, and that when an employer or insurer deliberately underpays an employee, as alleged here, the employee's exclusive remedy is a 50 percent statutory penalty. The Supreme Court of Illinois has confirmed this interpretation of the Act, stating that to allow a remedy outside the statutory penalties of the Act would cause indefinite prolonging of litigation, double recoveries, and inconsistent findings of fact.

The question here is whether RICO preempts the exclusivity clauses of the Act, allowing this suit. To the extent that a state law conflicts with a federal law, the state statute is void under the Supremacy Clause of the Constitution. U.S. Const., art. VI, cl. 2. *See Edgar v.*

---

fraudulent scheme." *United States v. Lea,* 618 F.2d 426, 430 (7th Cir.), *cert. denied,* 449 U.S. 832, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980). Here, the IIC hearing was an event essential to the scheme, and notice to plaintiff to attend the hearing was foreseeable. Therefore, the mailing can support a mail fraud action, plaintiff has alleged two connected mail frauds, and the "pattern" requirement of § 1961(5) is met in plaintiff's amended complaint.

Parker also argues that the mailings all concerned USF & G, not Parker. The amended complaint does not state that Parker mailed, received or caused to be mailed any relevant material. Memorandum in Support at 5. Plaintiff has alleged, however, that Parker and USF & G jointly participated in the scheme to defraud. Therefore, Parker can be held accountable for USF & G's mailings. *See United States v. Dick,* 744 F.2d 546, 552 (7th Cir.1984).

*Mite Corp.*, 457 U.S. 624, 631, 102 S.Ct. 2629, 2634, 73 L.Ed.2d 269 (1982). A conflict is found "where compliance with both federal and state regulations is a physical impossibility," or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id., citing Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). Thus, courts find a conflict if the state law's language is directly contradictory to that of the federal law; if the state law's effect is to discourage conduct the federal law seeks to encourage; or if comprehensive federal legislation has preempted all state regulations on that subject. *See* L. Tribe, *American Constitutional Law*, §§ 6–23–25 at 376–86 (1978).

Nothing in the RICO statute's language or legislative history indicates that Congress meant to vitiate the exclusivity clauses of state and federal compensation statutes. Courts have found that state exclusivity clauses do not violate the Constitution, *see* A. Larson, *Larson's Workmen's Compensation Law*, § 65.20 at 12–10–12–11 (1983), and that the "exclusiveness rule relieves the employer not only of common-law tort liability, but also of statutory liability under all state and federal statutes." *Id.* at § 65.30 at 12–11. The only actions not barred by such exclusivity clauses are those based on a federal constitutional right, as opposed to a common law or statutory right. *See Walker v. Rowe*, 535 F.Supp. 55, 57 (N.D.Ill.1982). *See also Rosa v. Cantrell*, 705 F.2d 1208 (10th Cir. 1982), *cert. denied*, 464 U.S. 821, 104 S.Ct. 85, 78 L.Ed.2d 94 (1983).

On the other hand, pragmatically, RICO would allow a claim here which the state act bars, resulting in a limitation, if not a conflict. The RICO statute states that nothing in it supersedes other federal or state law affording civil remedies in addition to RICO remedies, Pub.L. 91–452, § 1, *reprinted in* 18 U.S.C.A. § 1961 note at 233, indicating that RICO was meant to supplement and enhance other actions. The treble damage remedy, along with the predicate offense nature of the RICO cause of action, reinforce this enhancement nature of a RICO claim. Therefore, one could argue that since Congress' purpose was to provide an additional and enhanced cause of action based upon certain criminal predicate offenses, this purpose would be undermined by a ruling preventing access to this separate remedy.

Weighing these considerations, we believe federal policy dictates that plaintiff's action be barred. Congress has passed numerous federal compensation laws with exclusivity clauses, such as the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 905. Federal courts have enforced such clauses numerous times, *see Larson*, § 65.31 at 12–12. When an injury is covered by a federal or state worker's compensation statute, federal courts have held that actions based upon the Federal Torts Claims Act are barred. *Id.* at § 65.32. *See Griffin v. United States*, 703 F.2d 321 (8th Cir.1983). These laws and cases construing such laws make it clear that Congress approves of the policy of protecting the employer from multiple claims in return for the employer's automatic liability under such statutes. In the absence of any clear indication that RICO was designed to supersede the purpose of the exclusivity clauses in these numerous federal and state statutes, we will not find such a purpose and a conflict between RICO and these statutes. In the instant case, after allegedly being defrauded and learning that he would not be reemployed, plaintiff could easily have returned to the IIC and reopened his claim. By failing to return to the IIC, he is attempting the duplicative litigation condemned in *Robertson* and implicitly disapproved in the exclusivity clauses of state and federal statutes. Because the federal policies behind the RICO statute do not appear to conflict with those other federal policies encouraging the exclusive settlement of employment compensation disputes under compensation statutes, we find no conflict

between Illinois' Worker's Compensation Act and RICO. The Supremacy Clause does not call for preemption of the Illinois Act, and plaintiff's claim is barred under the Act.

## CONCLUSION

Defendants' motions to dismiss are granted, and plaintiff's claim is dismissed with prejudice.