**VICTRIX STEAMSHIP CO., S.A., Plaintiff,**

v.

**SALEN DRY CARGO A.B., Defendant.**

**No. 83 Civ. 1517 (RLC).**

United States District Court, S.D. New York.

Aug. 28, 1986.

---

Freehill, Hogan & Mahar, New York City, for plaintiff; Peter J. Gutowski, of counsel.

Haight, Gardner, Poor & Havens, New York City, for defendant; Donald J. Kennedy, Edward A. Rial, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

These consolidated cases are before the court on the motion of defendant Salen Dry Cargo A.B. ("Salen") to vacate the arrest and attachment of $234,291.49 of its funds in the possession of garnishee, Brown Brothers Harriman & Co. by plaintiff Victrix Steamship Co., S.A. ("Victrix"). Salen also moves for its costs and fees, including poundage, in connection with this attachment, pursuant to N.Y.C.P.L.R. § 6212(b). Plaintiff cross-moves to confirm a London arbitration award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 207, to enter a judgment against Salen pursuant to N.Y.C.P.L.R. §§ 5301–03 and to confirm the state court order of attachment that Salen seeks to vacate.

## FACTS

On December 19, 1984, Salen commenced a bankruptcy proceeding in Stockholm, Sweden. The next day, Salen told Victrix that it would not make any hire payments under its time charter party for Victrix's ship, the M/V Ploto. On March 18, 1985, Victrix initiated an admiralty action in this court by arresting the above-mentioned funds held by Brown Brothers. Victrix also sought an order to compel arbitration of its claim in London, as provided in the charter party. On March 20, Victrix commenced yet another action against Salen in New York State Supreme Court, and obtained an order of attachment against the same funds. That action was removed to this court on May 3, 1985 and consolidated with the pending admiralty action on November 13, 1985.[1]

These two actions were not Victrix's only attempts to obtain relief. At the time of their commencement, Victrix had already been busy pursuing its arbitration remedy. In January, 1985, Victrix appointed its arbitrator. Salen neither appointed an arbitrator nor participated in the arbitration; instead, Salen's administrator told Victrix that any claim should be filed with the bankruptcy estate in Sweden. Blick Affidavit, Exhibit B (Cable from Mikael Broome). Victrix nonetheless proceeded with the arbitration. The sole arbitrator held a hearing in London on April 4. Although Salen was notified of this hearing, it did not attend it. On April 16, the arbitrator awarded Victrix a total of $318,968.99. On May 8, the High Court of Justice, Queens Bench Division, Commercial Court, entered a judgment on that award pursuant to Section 26 of the Arbitration

---

1. Those two actions were then consolidated with *Insurance Company of North America v.* *M/V Seatransport* on December 16, 1985.

Act, 1950. Blick Affidavit, Exhibit N. Salen was given twenty-one days to challenge the entry of judgment; it never did so.

Salen first moved to vacate the arrest and attachment on June 12, 1985. That motion was adjourned pending the decision of the Court of Appeals for the Second Circuit in *Cunard Steamship Company, Ltd. v. Salen Reefer Services A.B.*, now reported at 773 F.2d 452 (2d Cir.1985). That decision was rendered on September 19, 1985; these cross-motions followed.

## DISCUSSION

If the English court had not entered a judgment against Salen, this case would be indistinguishable from *Cunard Steamship, supra*, and defendant's motion could be granted summarily. However, the English court's action puts this court in the difficult —and, as far as we can see, unprecedented—position of deciding which of two foreign proceedings merits a grant of comity. Because we do not believe that comity, under these unusual circumstances, requires enforcement of the London judgment, defendant's motion is granted and plaintiff's denied.

In contrast to the full faith and credit that is accorded to the judgments of courts within our federal system, comity is the more flexible:

> recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Our courts extend comity to foreign judgments if the rendering court has jurisdiction over the case and the parties, and if recognition would not violate the laws and public policies of the forum state. *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976). Foreign bankruptcy proceedings are granted comity where the foreign court has jur-isdiction over the bankrupt, and the foreign procedure neither prejudices forum citizens and forum creditors' rights, nor violates the forum's laws and public policies. *Id.* Such proceedings may be recognized in the forum state by means of a stay or dismissal of local creditors' actions. *Cornfeld v. Investors Overseas Services, Ltd.*, 471 F.Supp. 1255 (S.D.N.Y.) (Werker, J.), *aff'd*, 614 F.2d 1286 (2d Cir.1979). Before the court extends such deference to the foreign proceeding, it must first satisfy itself that forum creditors will be protected. *The Drexel Burnham Lambert Group, Inc. v. Galadari*, 777 F.2d 877 (2d Cir.1985). Vacating the creditor's attachment of local assets is also within the court's discretion. *Cunard Steamship*, 773 F.2d at 461. This deference to foreign bankruptcy proceedings "enables the assets of a [foreign] debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion." *Id.* at 458. The modern view rejects parochial protection of local creditors in the absence of a demonstration that their rights are unprotected in the foreign forum. *See*, Note, *Section 304 of the Bankruptcy Code*, 22 Colum.J.Transnat'l L. 541, 559 (1984).

In *Cunard Steamship*, plaintiff Cunard commenced an action in this court by obtaining an order of attachment against certain assets of Salen[2] held by garnishee, United Brands Company. Like Victrix, Cunard sought London arbitration of a claim based on a contract of charter between itself and Salen. Salen immediately moved to vacate the attachment. The court granted its motion, 49 B.R. 614 (S.D.N.Y.1985) (Sweet, J.) and the Second Circuit affirmed in an opinion by Chief Judge Re of the Court of International Trade, sitting by designation.

Factually, the only distinction between *Cunard Steamship* and this case is the existence of a foreign judgment against the bankrupt. An arbitral award that has been

---

**2.** Salen Dry Cargo A.B. and Salen Reefer Services AB are two of four Salen entities that went into bankruptcy on December 19, 1984.

reduced to a judgment is enforceable as a foreign money judgment in the courts of New York state, subject only to the limited defenses of N.Y.C.P.L.R. § 5304.[3] *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313, 1323 (2d Cir.1973), *cert. denied*, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974). Salen has not argued that any of those defenses is applicable to the London judgment at issue here. Thus, before addressing vacatur of the attachment, we must address an issue not presented to the *Cunard Steamship* court: whether comity requires enforcement of this judgment.[4]

■ The parties have not presented the court with any cases that address this issue, and our research has not uncovered any. Thus we resort to reasoning by analogy. We begin with the principle that comity cannot require enforcement of a foreign judgment where a domestic judgment would not be enforced. We then turn to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, to determine how a bankruptcy court in a proceeding ancillary to a foreign bankruptcy, would treat an action to enforce a domestic judgment.

■ When Congress revised this country's bankruptcy laws in 1978, it created a provision for proceedings ancillary to foreign bankruptcies. *See* 11 U.S.C. § 304. Section 304 was designed to handle the situation in *Cunard Steamship* and this case: actions affecting the local assets of a foreign bankrupt. Section 304 enables a foreign representative of the bankrupt to petition a U.S. bankruptcy court for certain forms of relief, such as a stay of legal actions, where creditors seek to satisfy their claims out of local assets. A § 304 proceeding in the bankruptcy court would be the preferable forum for this case; however, it is not the exclusive forum. *Cunard Steamship*, 773 F.2d at 456. We look to § 304, not because it governs this proceeding, but because it provides the best index of how a domestic judgment would be treated if enforcement were sought against a foreign bankrupt.

Section 304 allows a court to:

(1) enjoin the commencement or continuation of—

\*　　\*　　\*　　\*　　\*　　\*

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement of any judicial proceeding to create or enforce a lien against the property of such estate.

The statute then enumerates the six principles that are to guide the court in granting such relief:

(1) the just treatment of all holders of claims against or interests in such estate;

---

**3.** In its entirety, that statute provides that:

(a) **No recognition.** A foreign country judgment is not conclusive if:

1. the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

2. the foreign court did not have personal jurisdiction over the defendant.

(b) **Other grounds for non-recognition.** A foreign country judgment need not be recognized if:

1. the foreign court did not have jurisdiction over the subject matter;

2. the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend;

3. the judgment was obtained by fraud;

4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

5. the judgment conflicts with another final and conclusive judgment;

6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

7. in the case of jurisdiction based only on personal service the foreign court was a seriously inconvenient forum for trial of the action.

**4.** Because the arbitration award has been reduced to a judgment, the provisions of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards are inapplicable. That statute, by its terms, applies only to "arbitral awards" and not to judgments based on such awards.

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

Even a cursory review of these factors shows that enforcement of a domestic judgment would be enjoined by a court applying § 304. There is no risk of injustice to Victrix, which has presented the arbitration award to the bankruptcy estate. Blick Affidavit, Exhibit L (Letter to the Bankruptcy Judge). Victrix is not a United States creditor, but a Panamanian corporation whose sole contact with this country appears to be this lawsuit. Victrix's actions in this forum manifestly attempt to effect an end run around the Swedish bankruptcy proceeding. Sweden's bankruptcy laws are substantially similar to our own. *Cunard Steamship*, 773 F.2d at 459. The Second Circuit has already dictated that comity be extended to Swedish bankruptcy proceedings. *Id.* The sixth factor is inapplicable to Salen, a corporate bankrupt. It should be apparent that a domestic judgment would not be enforced under these circumstances. We see no reason to enforce a foreign judgment under circumstances in which Congress has allowed for non-enforcement of domestic judgments.

■ Plaintiff argues that non-enforcement of the London judgment is itself a violation of comity. We disagree. While comity may require recognition of the London judgment—meaning that we may be required to give it res judicata and collateral estoppel effect—recognition is not the same as enforcement. *See, e.g., Island Territory of Curacao*, 489 F.2d at 1321 n. 8. Plaintiff's arguments concerning the defendant's waiver of a bankruptcy defense, judicial estoppel and collateral estop-

pel have been considered and are rejected as frivolous. Plaintiff's motion is denied.

As a result of our holding that the London judgment need not be enforced, this case becomes indistinguishable from *Cunard Steamship*. Thus, the motion to vacate the attachment must be granted. Defendant is to recover its costs and fees, pursuant to the provisions of N.Y.C.P.L.R. § 6212(b) for wrongful attachment.

IT IS SO ORDERED.