**Michael TELLIS, Plaintiff-Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY and Parker House Sausage Company, Defendants-Appellees.**

No. 85–2704.

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1986.

Decided Nov. 6, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 9, 1987.

---

Charles R. Purcell, Chicago, Ill., for plaintiff-appellant.

Nancy Jo Arnold, Kralovec, Marquard, Doyle & Gibbons, Chtd. Chicago, Ill., for defendants-appellees.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

This case comes to us on appeal following the district court's grant of a motion by defendants Parker House Sausage Co. ("Parker") and Parker's insurer, United States Fidelity & Guaranty Co. ("USF & G"), 625 F.Supp. 92, to dismiss plaintiff Michael Tellis' complaint. Plaintiff's complaint consisted of three counts, all based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"). This case gives us our first opportunity to determine the appropriate

statute of limitations for a civil RICO claim. For the reasons stated herein, plaintiff's complaint is time-barred, and the dismissal of the complaint is affirmed on that basis only.

I

Our disposition of this case necessitates only a brief review of the facts as alleged by plaintiff. Plaintiff was employed by Parker from 1977 until May 21, 1979, when he was injured on the job. He subsequently required surgery and received disability payments from USF & G until February 1980. When plaintiff then sought to return to work, he was told that he had been discharged.

In March 1980, USF & G offered a lump-sum settlement payment to plaintiff, contingent upon the waiver of his claim against Parker under the Illinois Workers' Compensation Act. In order to induce plaintiff to accept this offer, the defendants told plaintiff that if he accepted this offer he would be returned to employment at Parker. Furthermore, to induce the Illinois Industrial Commission ("Commission") to approve this proposed settlement, USF & G said that plaintiff would be returned to work at Parker at a "light duty" job. Plaintiff subsequently accepted this offer on March 20, 1980, and soon thereafter reported to work at Parker, but he was denied reemployment.

On May 24, 1983, plaintiff brought the instant complaint, which consists of three counts all based on civil RICO. He essentially alleged that the defendants defrauded him and the Commission by falsely representing that plaintiff would be returned to light-duty work at Parker. Defendants moved to dismiss plaintiff's claim pursuant to Fed.R.Civ.P. 12(b)(6), arguing that plaintiff's RICO claim is barred by the exclusivity provisions of the Illinois Workman's Compensation Act, and also that plaintiff's RICO claim is barred by the statute of limitations contained in Ill.Rev.Stats. ch. 110, ¶ 13–202. The district court dismissed the complaint on the basis of the former argument. Both parties agree, however,

that this Court is free to reach the statute of limitations issue and decide the case on that basis. We therefore reach the important and recurring question of the appropriate statute of limitations period for a civil RICO claim.

## II

The Supreme Court recently faced an analogous problem when it had to decide the appropriate statute of limitations for § 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254. There were two distinct aspects to the Court's analysis of the appropriate statute of limitations for a § 1983 claim in *Wilson*. The first aspect is that state law is the appropriate source of law for determining the statute of limitations so long as it is consistent with federal law or policy to do so. *Wilson*, 105 S.Ct. at 1942. The second aspect is, given that state law is the appropriate source of law, how should one select the appropriate statute of limitations under state law? In response to this second aspect, the Court set down a three-part process. The first step is to determine whether state law or federal law governs the characterization of the federal claim for statute of limitations purposes. *Wilson*, 105 S.Ct. at 1943. The second step is, assuming that federal law applies, to determine whether all such federal claims (in the instant case all civil RICO claims) should be uniformly characterized, or should instead be characterized on a case-by-case basis depending on the particular facts and circumstances of each individual case. *Id.* The third step is to characterize the essence of the federal claim in the instant case and select the most appropriate state statute of limitations given this characterization. *Id.*

Before we can apply these two aspects of *Wilson* to the instant case, we must note that § 1983 has its own rules of decision statute, 42 U.S.C. § 1988, upon which the Supreme Court relied in *Wilson*. By contrast, RICO lacks a statute analogous to 42 U.S.C. § 1988. However, a close examination of the role that 42 U.S.C. § 1988 played in *Wilson* indicates that this Court

is fully justified in applying these two aspects of *Wilson* to civil RICO claims despite the lack of a statute analogous to 42 U.S.C. § 1988.

The first aspect of *Wilson* that we apply to the instant case is the proper source of law for determining the appropriate statute of limitations for a federal claim that lacks its own explicit limitation period. In analyzing this aspect of the issue, the Supreme Court noted that it was "settled practice" to adopt a local statute of limitations period so long as it was not inconsistent with federal law or policy to do so. *Wilson*, 105 S.Ct. at 1942. Although the Court further noted that 42 U.S.C. § 1988 supported this approach, it is clear that there is strong support for this approach independent of 42 U.S.C. § 1988.

The second aspect of *Wilson* that we apply to the instant case is, given that state law is the appropriate source of law, how should a court select the appropriate statute of limitations under state law? In fashioning a three-part process as a general method for selecting the appropriate state statute of limitations for a federal cause of action which lacks its own time limitation, the Court did not base its decision on 42 U.S.C. § 1988. *Wilson*, 105 S.Ct. at 1943. The Court relied on 42 U.S.C. § 1988 only when it applied this general method to the task of selecting the appropriate state statute of limitations for § 1983 claims. Since 42 U.S.C. § 1988 was not the basis for the general method espoused in *Wilson*, there is no reason this general method should not apply to the selection of the appropriate state statute of limitations for civil RICO claims. We therefore both use Illinois law as the appropriate source of law for determining the statute of limitations in the instant case and apply the three-step process set forth in *Wilson* to make this determination.

■ In *Wilson*, the Supreme Court held that federal law governed the characterization of a § 1983 claim for statute of limitations purposes. We reach the same conclusion regarding a civil RICO claim for similar reasons. As a general matter the

problem of characterizing a federal claim for statutory purposes has usually been held to be a question of federal law. *Wilson*, 105 S.Ct. at 1944. Additionally, the federal interests in uniformity and firmly-defined-but-easily-applied rules, relied on by the Supreme Court in *Wilson*, apply with equal force here and warrant the conclusion that federal law governs the characterization of RICO claims for statute of limitations purposes. *Malley-Duff & Associates v. Crown Life Insurance Co.*, 792 F.2d 341, 346 (3d Cir.1986).

The second step is to determine whether courts should characterize all federal RICO claims in the same way, thereby resulting in a uniform statute of limitations period for all RICO claims, or instead characterize each individual RICO claim differently depending on the facts and circumstances of the particular RICO claim, thereby resulting in varying statute of limitations periods for RICO claims. The vast majority of courts have selected a uniform characterization of all RICO claims. Of the circuit courts of appeals that have faced this issue, the Third Circuit has adopted a uniform characterization, *Malley-Duff & Associates v. Crown Life Insurance Co.*, 792 F.2d 341, 349 (3d Cir.1986), while the Eleventh Circuit has noted in dicta that after *Wilson* the case-by-case approach might well be foreclosed, *Hunt v. American Bank & Trust Co.*, 783 F.2d 1011, 1014 n. 5 (11th Cir.1986). Only the Sixth Circuit has adopted a case-by-case approach. *Silverberg v. Thomson McKinnon Securities, Inc.*, 787 F.2d 1079, 1083 (6th Cir.1986). At the district court level, almost all the courts facing the issue have followed the uniform approach. See, *e.g., Davis v. A.G. Edwards & Sons, Inc.*, 635 F.Supp. 707, 711 (W.D.La.1986); *Argosy v. Bradley*, 628 F.Supp. 1359, 1360–1361 (D.Utah 1986); *Morley v. Cohen*, 610 F.Supp. 798, 809 (D.Md.1985); *Victoria Oil Co. v. Lancaster Corp.*, 587 F.Supp. 429, 431 (D.Colo. 1984). The same holds true for the district courts in this Circuit. See, *e.g., Ambrosino v. Rodman & Renshaw, Inc.*, 635 F.Supp. 968, 973–974 (N.D.Ill.1986); *Hennessey v. Connecticut General Life Ins. Co.*, No. 84

C 10582 (N.D.Ill. June 19, 1986) [Available on WESTLAW, DCTU database]; *Davis v. Smith*, 635 F.Supp. 459, 462 (N.D.Ill.1985); *Electronic Relays (India) Pvt. Ltd. v. Pascente*, 610 F.Supp. 648, 650 (N.D.Ill.1985); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.*, No. 80 C 3157 (N.D.Ill. Nov. 22, 1985) [Available on WESTLAW, DCTU database]; *Long Grove Country Club Estates v. Village of Long Grove*, No. 82 C 6868 (N.D.Ill. Oct. 7, 1985) [Available on WESTLAW, DCTU database]; *Bolingbrook Properties II v. Irvin*, No. 84 C 10480 (N.D.Ill. Aug. 8, 1985) [Available on WESTLAW, DCTU database]; *Traylor v. Central States, Southeast & Southwest Areas Pension Fund*, Nos. 83 C 2206 & 83 C 6283 (N.D.Ill. Nov. 6, 1984) [Available on WESTLAW, DCTU database].

We follow the majority of courts and select the uniform-characterization approach. Because of the nature of RICO, a single RICO claim in a particular case could be characterized in differing ways so as to create conflicting statute of limitations periods if the uniform-characterization approach were not adopted. *Wilson*, 105 S.Ct. at 1945–1947; *Malley-Duff*, 792 F.2d at 348–349; *A.G. Edwards*, 635 F.Supp. at 711; *Electronic Relays*, 610 F.Supp. at 650. This is because many different types of acts can serve as predicate acts giving rise to a single RICO claim. Each of these predicate acts, although part of a single civil suit alleging a violation of civil RICO, may be sufficiently unrelated to one another so that each act viewed in isolation would be subject to different statute of limitations periods. If a court did not follow the uniform-characterization approach, it would then be saddled with having to decide which predicate act predominates the RICO claim, and then choose the statute of limitations period associated with that predominating act. The strong interests in uniformity and certainty and the desire to avoid time-consuming litigation that would be needed to determine the appropriate statute of limitations period for such cases warrant an adoption of the uniform-characterization approach. The Su-

preme Court relied on similar reasons in selecting the uniform-characterization approach for § 1983 claims, *Wilson*, 105 S.Ct. at 1947; those reasons apply to RICO claims with equal force.

Having selected the uniform-characterization approach, the final step is to select the one Illinois statute of limitations that best characterizes all civil RICO claims. There are two alternatives: Ill.Rev.Stat. ch. 110, ¶ 13–202 (1985), which creates a two-year period for all actions for a statutory penalty, and Ill.Rev.Stat. ch. 110, ¶ 13–205 (1985), which creates a five-year period for actions based on common law fraud, as well as "all civil actions not otherwise provided for." Our sister circuits have differed in their characterization of civil RICO claims and thus in their selection of statute of limitations for civil RICO claims. The Second and Ninth Circuits have both selected a three-year period for actions based on a statute; neither court discussed other alternative characterizations. *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249 (2d Cir.1985); *Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir.1984). The Third Circuit has selected a six-year "catchall" limitations period, *i.e.*, a statute of limitations for actions not governed by a more specific period of limitations. *Malley-Duff*, 792 F.2d at 351–352. Several district courts have also selected catchall limitations periods. See, *e.g.*, *Morley*, 610 F.Supp. at 809; *Victoria Oil*, 587 F.Supp. at 432. Other district courts have noted that a large number of civil RICO claims are based on fraud, and have selected the appropriate limitations period for actions based on fraud. See, *e.g.*, *A.G. Edwards*, 635 F.Supp. at 711–714; *Argosy*, 628 F.Supp. at 1360–1361. Parenthetically, these cases are of limited value, since the choice of limitations periods faced by these other courts differs from our choice under Illinois law, and hence this difference may have affected the characterization of civil RICO claims made by these other courts. In our own Circuit, the district courts sitting in Illinois have largely selected the two-year period for actions for a statutory penalty. See, *e.g.*, *Ambrosino*,

635 F.Supp. at 974; *Hennessey*, No. 84 C 10582; *Wabash Pub. Co. v. Dermer*, No. 84 C 6766 (N.D.Ill. May 12, 1986) [Available on WESTLAW, DCTU database]; *Electronic Relays*, 610 F.Supp. at 652–653; *Baselski*, No. 80 C 3157; *Long Grove Country Club Estates*, No. 82 C 6868; *Bolingbrook Properties II*, No. 84 C 10480; *Taylor*, Nos. 83 C 2206 & 83 C 6283. Two judges have analogized civil RICO claims to fraud claims and selected a five-year period. *Davis*, 635 F.Supp. at 714; *Griggs v. Robinson Securities*, No. 84 C 4679 (N.D.Ill. May 9, 1985) [Available on WESTLAW, DCTU database].

■ In our view a civil RICO claim is best characterized as an action for treble damages. The treble damages provision, 18 U.S.C. § 1964(c), is the most significant aspect of civil RICO. The vast majority of injuries suffered by civil RICO plaintiffs could be remedied under state law; it is largely because of the treble damages provision that these plaintiffs seek a remedy under civil RICO in federal court. See *Electronic Relays*, 610 F.Supp. at 651. The treble damages provision is also significant because it gives incentives to private citizens to help law enforcement authorities police racketeering activity, *i.e.*, creates incentives for citizens to act as private attorneys general. *Id.* In summarizing the applicability of RICO to civil suits brought by private persons, Congressman Poff, a chief spokesman for the bill, focused exclusively on the treble damages provision, further underscoring its significance. 116 Cong. Rec. 35,295 (1970) (cited in *Electronic Relays*, 610 F.Supp. at 651). Finally, the Supreme Court's discussion of the legislative history of RICO in *Sedima, S.P.R.L. v. Imrex Co.*, 105 S.Ct. 3275, demonstrates that the treble damages provision was the genesis of the civil RICO action for private litigants. *Id.* at 3280–3281. The Supreme Court stated that prior to the addition of the treble damages provision, "[t]he civil remedies in the bill passed by the Senate, S. 30, were limited to injunctive actions by the United States and became §§ 1964(a), (b), and (d)." *Id.* at 3280.

This Court has previously held that a treble damage antitrust suit is most appropriately characterized as an action for a penalty. *Hoskins Coal & Dock Corp. v. Truax Traer Coal Co.*, 191 F.2d 912 (7th Cir.1951), certiorari denied, 342 U.S. 947, 72 S.Ct. 555, 96 L.Ed. 704 (1952) (this case subsequently became obsolete when Congress enacted a statute of limitations for civil antitrust actions).[1] The treble damages provision in § 1964(c) is virtually identical to the damages provision in the antitrust laws. See 15 U.S.C. § 15. This parallelism is not merely coincidental, as Congressman Poff explained in his summary of the House version of RICO: "[RICO] represents, in large measure, an adaptation of the machinery used in the antitrust field to redress violations of the Sherman Act and other antitrust legislation." 116 Cong.Rec. 35,295 (1970). Both the Supreme Court and this Court have noted in other contexts the strong parallel between the treble damages remedy in antitrust law and the treble damages remedy under civil RICO. See *Sedima*, 105 S.Ct. at 3282 n. 8; *Carter v. Berger*, 777 F.2d 1173 (7th Cir.1985). In *Carter*, we relied on an analogy to the antitrust laws in ascertaining the real party in interest for purposes of prosecuting a civil RICO claim. In drawing the analogy, we placed special emphasis on the fact that the ability to recover treble damages is a central characteristic of both an antitrust and a civil RICO cause of action. 777 F.2d at 1175–1176. Because a civil RICO claim is best characterized as an action for treble damages, and such an action is penal in nature, *Electronic Relays*, 610 F.Supp. at 652, it follows that the two-year statute of limitations period for actions based on a statutory penalty in Illinois should also apply to all civil RICO claims.

Admittedly, many civil RICO claims are based on fraud, so that if we uniformly characterized civil RICO claims as fraud claims and selected a five-year limitations period, we would frequently be correct. But a quick review of the possible predicate acts for a civil RICO claim shows that many acts quite apart from fraud serve as predicate acts. 18 U.S.C. § 1961(1); see *Malley-Duff*, 792 F.2d at 351 (rejecting a characterization of RICO claims as fraud claims). Moreover, given the recent trend towards requiring more than merely the commission of two predicate acts to constitute a "pattern of racketeering activity," see *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986), it is likely that so-called "garden variety" fraud claims will be a decreasing percentage of civil RICO claims in the future. Therefore it is preferable to seek a common aspect of all civil RICO claims as the basis for a uniform characterization, rather than selecting one type of predicate act to represent all civil RICO claims.

Although several other courts have not reached the same result as here, upon closer inspection the potentially adverse impact of these other decisions is not significant. Many of these other courts, including both the Second and Ninth Circuits, never even considered our characterization as a possible alternative. *Durante*, 755 F.2d at 249; *Compton*, 732 F.2d at 1433; *Morley*, 610 F.Supp. at 809. A few courts, including the Third Circuit, did consider and reject our characterization, but in those relevant states the limitations period for a statutory penalty was only one year, not two years. *Malley-Duff*, 792 F.2d at 351; *Argosy*, 628 F.Supp. at 1360–1361.

Having selected two years as the appropriate limitations period, plaintiff's claim must be dismissed as time-barred. On this

---

1. Plaintiff attacks this argument by claiming that the Supreme Court rejected the reasoning of *Hoskins Coal* in *Wilson*. This is not completely accurate. In *Hoskins Coal*, the characterization issue was determined as a matter of state law. In *Wilson*, the Supreme Court noted that "[t]he question whether antitrust claims were more analogous to penal claims or to claims arising in tort, contract, or on a statute, was treated as a matter of federal law by the

better reasoned authority." *Wilson*, 105 S.Ct. at 1944 n. 19. We agree that this aspect of *Hoskins Coal* was incorrect, and indeed we make our characterization today of a civil RICO claim as a matter of federal law. However, the proper source of law for making the characterization of civil antitrust claims does not detract whatsoever from the ultimate conclusion in *Hoskins Coal* that the proper characterization of a civil antitrust claim was as an action for treble damages.

basis, the district court's dismissal of plaintiff's claim is affirmed.

RIPPLE, Circuit Judge, dissenting.

Several centuries from now, when the archeologists have unearthed a copy of the Federal Reporter and turned it over to the legal historians for study and analysis, our descendants will indeed be puzzled to discover that a society in which judicial resources were such a scarce "commodity" expended so much of that "commodity" searching its state codes for "analogous" limitation periods. I doubt very much that, at least in this regard, our priorities will command much admiration.

Fixing the statute of limitation for a particular cause of action is a legislative function. Indeed, it is not a particularly difficult or complex legislative function. In most circumstances, it can be handled in a sentence. Yet, in a significant number of statutory schemes of nationwide application, Congress has failed to fulfill this basic responsibility and has left the courts to spend hundreds of hours—and thousands of dollars in government money—searching for a substitute solution.[1] Meanwhile, justice is delayed, not only in the cases in which limitation issues arise but also in the many cases, often raising far more serious questions, which must wait while this tedious process takes place.

Congress had an opportunity to settle the limitations issue in civil RICO[2] but it did not take the time to do so. Therefore, after much litigation and conflicting decisions among the district courts,[3] this court, like its sister circuits, must now undertake this difficult and necessarily imprecise task.[4]

Given the difficulty of the court's task and the imprecision which it necessarily entails, I am reluctant to part company from my brothers in their conscientious attempt to reach a principled result. This reluctance is reinforced by the thoughtful efforts of a good many district judges who, after giving the matter considerable thought, concur with the majority. Nevertheless, after studying the majority opinion and its precursors from the district courts, I must conclude that the judges on several of our sister circuits have made a more compelling case. Accordingly, I respectfully dissent.

The court quite properly notes that, when confronted with the difficult task of choosing the most analogous state statute of limitations, the appropriate approach is to "characterize the essence of the federal claim in the instant case and select the most appropriate state statute of limitations given this characterization." Maj.Op. at 743 (citing *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985)). However, when it turns to that task, instead of focusing on the "essence" of the civil RICO *cause of action*, the court focuses only on the *remedy* provided by that cause of action.

This methodological lapse is, I respectfully suggest, at least partially attributable to the court's over-reliance on the analogy of RICO to the Clayton Act. As this court has noted just recently, the references to

1. Dissenting from denial of certiorari in *Preuit & Mauldin v. Jones*, —— U.S. ——, 106 S.Ct. 893, 895 n. 3, 88 L.Ed.2d 926 (1986), Justice White similarly suggested that the Congress ought to extricate the courts from the same exercise with respect to limitations in section 1983 actions. *See generally Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

2. For a description of the Congress' consideration of the statute of limitation issue, see *State Farm Fire & Casualty Co. v. Estate of Caton*, 540 F.Supp. 673, 684 (N.D.Ind.1982).

3. *See* Maj.Op. at 744–745.

4. As the *ABA Task Force Report* noted:

[T]he law regarding the applicable statute of limitations for Civil RICO claims is confused, inconsistent, and unpredictable. The current approach is virtually guaranteed to incite complex and expensive litigation over what should be a straight-forward matter. In addition to disputes over the proper characterization of the RICO claim, which indeed may vary depending on whether it is governed by federal or state law, the current approach raises the possibility of further conflicts over the appropriate choice of law in multistate factual situations. (footnotes omitted)

*Report of the Ad Hoc Civil RICO Task Force*, 1985 A.B.A. Sec. Corp. Banking & Bus.L.Rep. 391–92 [hereafter cited as *ABA Task Force Report*].

the antitrust laws in the legislative debates on RICO dealt basically with the establishing of the treble damages remedy. *Illinois Dep't of Revenue v. Phillips*, 771 F.2d 312, 315 (7th Cir.1985); *see also Schacht v. Brown*, 711 F.2d 1343, 1358 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). The antitrust laws and civil RICO statutes do not have the same purpose. Although RICO and the Clayton Act both require injury to business or property for standing to sue, there is little overlap between the types of conduct each prohibits.[5] The RICO statute is a *sui generis* exercise of the Congress' legislative power aimed at curtailing a broad spectrum of dishonesty and corruption in business and government. In selecting a statute of limitations, that broad purpose—and the myriad of schemes which fall within it— must be the focus of the court's attention.

Equally disturbing is the court's characterization of RICO as no more than a federal surcharge against conduct already forbidden under state law. As the *ABA Task Force Report* noted, "RICO is manifestly directed towards activities that go beyond the mere commission of predicate offenses...." *Report of the Ad Hoc Civil RICO Task Force*, 1985 A.B.A. Sec. Corp. Banking & Bus.L.Rep. 390–91. RICO was

designed to protect a distinct federal concern—the harm inflicted on business or government by a pattern of illegal activity.[6] The statute is an explicit recognition that illegal conduct of a continuing nature presents a special threat. Indeed, it was a realization "that civil RICO is truly *sui generis* and that particular claims cannot be readily analogized to causes of action known at common law ..." that led the Third Circuit to conclude that RICO actions in the Commonwealth of Pennsylvania should be governed by that state's "residual 'catchall' statute of limitations for actions, primarily based on statute, that are not governed by any more specific period of limitations." *Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 352, 353 (3d Cir.1986); *accord Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir.1984) (applying the California three-year period for actions based on statute); *see also Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 249 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).[7]

In my view, the approach of the Third Circuit in *Malley-Duff* is the most realistic approach to the problem of selecting an appropriate statute of limitations for civil RICO actions. Rather than grounding the

---

**5.** For the same reasons, it would be inappropriate to implement the methodology of *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 172, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983) and "turn away from state law" in favor of the four-year statute of limitations in the Clayton Act. "[S]tate law remains the norm for borrowing limitations periods," *id.* at 171, 103 S.Ct. at 2294, and the substantial differences in the purposes of the two statutes and in the conduct they proscribe hardly justifies deviation from the norm. Indeed, since Congress consciously incorporated some features of the Clayton Act in enacting RICO but failed to use the same statute of limitations, this court should be particularly hesitant to take that step. *See ABA Task Force Report* at 392. *But see A.J. Cunningham Packing Corp. v. Congress Financial Corp.*, 792 F.2d 330, 337–341 (3d Cir. 1986) (Sloviter, J., concurring).

**6.** As the Supreme Court noted in *United States v. Turkette*, 452 U.S. 576, 586, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981), "Congress was well aware that it was entering a new domain of federal involvement through the enactment of

this measure." Indeed, in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court emphasized the need for "continuity plus relationship," in establishing a "pattern of racketeering activity." *Id.* at 3285 n. 14. Of course, once the "pattern" is established, the plaintiff may recover for "the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise." *Id.* at 3286.

**7.** *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239 (2d Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985), was cited by the Third Circuit in *Malley-Duff & Assoc., Inc. v. Crown Life Ins. Co.*, 792 F.2d 341, 347–348 (3d Cir.1986), as authority for the proposition that a single statute of limitations should govern all civil RICO actions. *Malley-Duff*, 792 F.2d at 347–348 (N.Y.Civ.Prac.L. & R. 214(2) (McKinney Supp. 1983–1984)) (governing actions to enforce a liability created by statute). However, in *Bankers Trust v. Feldesman*, 65

analysis in an analogy to another statutory cause of action aimed at a very different evil—an analogy destined to limp—it recognizes civil RICO as a unique statutory cause of action designed to curb a unique danger. Accordingly, I would apply the Illinois five-year period for "all civil actions not otherwise provided for." This phrase, I respectfully suggest, describes accurately civil RICO. It is also of sufficient length to provide ample opportunity for the putative litigant to file a complaint which intelligently describes the precise nature and extent of his injuries. It is not at all certain, I suggest, that the two-year period adopted by the court today will afford all litigants who might invoke the protection of civil RICO ample time to accomplish that feat.

This court's deviation from the course of decision emerging in the other circuits has one salutary aspect. Perhaps the Congress will now complete its legislative work and permit the courts to use their time more effectively by applying rather than making law.[8]

B.R. 470 (S.D.N.Y.1986), the court held that *Durante* could not be read as establishing such a general rule. Nonetheless, the district court in *Bankers Trust* did adopt such a rule.

8. *See ABA Task Force Report* at 393.