**NEW LINE INTERNATIONAL RELEASING, INC.,**
Plaintiff,

v.

**IVEX FILMS, S.A., d/b/a Ivex, Defendant.**

No. 91 Civ. 4794 (RLC).

United States District Court,
S.D. New York.

April 20, 1992.

---

OPINION

ROBERT L. CARTER, District Judge.

Plaintiff New Line International Releasing, Inc. ("New Line") brings this diversity action against defendant Ivex Films, S.A. ("Ivex") for breach of a distribution agreement. Ivex is currently involved in insolvency proceedings in Spain. Ivex has moved for dismissal of the complaint based on the doctrine of international comity, and for an injunction staying New Line from suing Ivex in any court other than the Spanish court that has jurisdiction over the insolvency proceedings.

I.

Defendant Ivex is a Spanish corporation with no assets in the United States. From March 1988 to November 1990, New Line and Ivex entered into a series of sixteen contracts in which Ivex agreed to distribute New Line's films in Spain, Portugal, and several other foreign jurisdictions. The contracts contained choice of venue clauses requiring any action arising out of them to be brought within the County of New York, and to be construed in accordance with New York law. New Line contends that subsequent to taking possession of at least some of the films, Ivex failed to make timely payments to New Line and entered into subcontracts which violated the terms of its contract with New Line. In March 1991, the Court of First Instance, Number Three, of Sant Feliu de Llobregat, located in Barcelona, Spain, placed Ivex under the protection of Spain's Suspension of Payments Act due to Ivex's inability to pay its creditors. New Line subsequently began this action seeking declaratory and injunctive relief and damages.

Under the Suspension of Payments Act, the Spanish court appoints auditors to control the debtor's business, which continues in operation while the debtor is under court supervision. The court also convenes a creditors' meeting for consideration and approval of a debt repayment agreement. However, the meeting may not be convened for months, and sometimes years. While the debtor is under court supervision, a creditor such as New Line, who is a party

Blumenthal & Lynne, P.C. (Benjamin Zinkin, of counsel), New York City, for plaintiff.

Douglas F. Eaton (Douglas F. Eaton, of counsel), New York City, for defendant.

to an executory contract, may not bring an action to recover damages under the contract, although the creditor may seek a declaratory judgment in the Spanish court to recover its rights and property under the contract. It may take one year or longer, however, to obtain the declaratory judgment. Affidavit of Douglas F. Eaton; Affidavit of Nestor Nieves; Affidavit of Michael K. O'Donnell.

Ivex's Suspension of Payments proceeding will involve at least thirty-nine creditors, including ten Spanish banks. Ivex contends that the instant action should be dismissed based on the doctrine of international comity, since under Spanish law the Spanish court has exclusive jurisdiction over New Line's claim.

## II.

### A.

■ In the leading case on international comity, *Hilton v. Guyot*, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895), the Supreme Court described the doctrine as:

> the recognition which one nation allows within its territory to the legislative, executive, or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

159 U.S. at 164, 16 S.Ct. at 143. The doctrine applies in the state of New York. *See, e.g., SNR Holdings, Inc. v. Ataka America, Inc.*, 54 A.D.2d 406, 388 N.Y.S.2d 909 (1st Dep't 1976). Comity is extended to foreign bankruptcy proceedings "where the foreign court has jurisdiction over the bankrupt, and the foreign procedure neither prejudices forum citizens and forum creditors' rights, nor violates the forum's laws or public policies." *See Victrix S.S.*

*Co., S.A. v. Salen Dry Cargo A.B.*, 65 B.R. 466 (S.D.N.Y.1986) (Carter, J.); *accord Cunard S.S. Co., Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 457–59 (2d Cir.1985).

The purpose of extending comity to foreign bankruptcy proceedings is to "enable[ ] the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion. Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard, supra*, 773 F.2d at 458. Before extending comity, a court "must first satisfy itself that forum creditors will be protected" in the foreign proceeding. *Victrix, supra*, 65 B.R. at 468. However, "[t]he modern view rejects parochial protection of local creditors in the absence of a demonstration that their rights are unprotected in the foreign forum." *Id.*

The parties concede that the Spanish tribunal is a court of competent jurisdiction, and that under Spanish law New Line would normally assert its claim in the proceeding before that court. Therefore, the decision to extend comity or not will turn on whether dismissing this action in favor of the Spanish proceeding would result in prejudice to New Line or violate New York public policy.

### B.

■ New Line asserts that it will be prejudiced if comity is extended to the Spanish Court because remedies that are available in domestic bankruptcy courts are unavailable in the Spanish court. Such prejudice, New Line asserts, violates American public policy.[1] New Line contends that if Ivex had filed a voluntary bankrupt-

---

1. While New Line argues that its federal bankruptcy remedies will be prejudiced if it is forced to proceed in Spain and that therefore federal public policy will be violated, New York comity law, which must be applied in this diversity action, *see Kenner Prods. Co. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478, 479 (S.D.N.Y.1982) (Stewart, J.), requires that the court consider whether New Line's state remedies are prejudiced and whether state pub-

lic policy is violated. *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976). It is unclear whether the court may consider federal prejudice and public policy under New York law. However, given the importance of protecting domestic creditors from prejudice in foreign fora, New York courts would probably consider these factors in deciding whether to extend comity.

cy petition in a United States bankruptcy court, New Line would have taken advantage of 11 U.S.C. § 365 (1988), which allows the bankruptcy trustee, with the aid of the bankruptcy court, to assume or reject contracts on which the debtor has defaulted, and to cure the default if the trustee chooses to assume the contract. *See id.* §§ 365(a), (b)(1), (d). New Line asserts that in a domestic bankruptcy court it would have taken advantage of this provision either to terminate its contract with Ivex or to force Ivex to make the payments due under the contract. In the Spanish court the only comparable remedy is a declaratory judgment proceeding under which New Line could terminate the contract but could not collect damages, and which could take one year or longer.

However, these contentions are insufficient to demonstrate prejudice to New Line's interests or a violation of American public policy. Since it does not appear that Ivex has a place of business or property in the United States, Ivex could not have filed a domestic bankruptcy petition. *See, e.g.,* 11 U.S.C. § 109 (1988). Therefore New Line cannot be prejudiced by any differences that exist between Spanish and domestic bankruptcy proceedings. Moreover, even if New Line could file a domestic bankruptcy petition, extending comity to the Spanish court would not prejudice New Line's interests because there is little difference between the American and Spanish bankruptcy procedures at issue. Under both countries' procedures New Line could terminate its contract with Ivex. Although the Spanish declaratory judgment proceeding might take one year or longer, there is no indication that a domestic bankruptcy court would take significantly less time to terminate the contract. *See, e.g., Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir.1982) ("What constitutes a reasonable time [to assume or terminate a contract] is left to the bankruptcy court's discretion in the light of the circumstances of each case."). While in a domestic proceeding, unlike the Spanish proceeding, the bankruptcy trustee could decide to cure a default by paying New Line the funds it requests, this procedure is purely discre-

tionary under the Bankruptcy Code. *See Martin–Trigona v. Champion Fed. Sav. & Loan Ass'n,* 892 F.2d 575, 578 (7th Cir. 1989). Without some indication that a domestic bankruptcy trustee would actually decide to cure Ivex's default, New Line's interests are not prejudiced by the lack of a similar procedure under Spanish law.

### C.

New Line also argues that under United States bankruptcy law, its contracts with Ivex have clearly been terminated, and thus an American bankruptcy court would not assert jurisdiction over its dispute with Ivex. Being forced to subject itself to the jurisdiction of the Spanish court, New Line contends, is inconsistent with its rights under American law and therefore prejudices New Line's interests. Once again, however, New Line has not demonstrated prejudice. Under federal bankruptcy law, the termination decision clearly rests with the bankruptcy court. The bankruptcy court, in conjunction with the trustee, may choose to assume or terminate the contract. *See* 11 U.S.C. § 365 (1988); *Martin–Trigona, supra,* 892 F.2d at 578. Thus, contrary to New Line's assertion, a domestic bankruptcy court would exercise jurisdiction over New Line's contract, and only after exercising such jurisdiction would the court decide whether or not to terminate it.

The cases on which New Line relies are clearly distinguishable. In *Thompson v. Texas Mexican Ry. Co.,* 328 U.S. 134, 66 S.Ct. 937, 90 L.Ed. 1132 (1946), the Supreme Court stated that contract provisions allowing either party to terminate a contract are not affected by the bankruptcy of one party, thus one party to such a contract may terminate it without the bankruptcy court's permission. *See id.* at 142, 66 S.Ct. at 943. The contracts at issue here, however, contain no such provisions. *In re Jolly,* 574 F.2d 349 (6th Cir.), *cert. denied sub nom Still v. Chattanooga Memorial Park,* 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978), held that a contract had been effectively terminated before a bankruptcy proceeding began, since there had been a suit and a final judgment against

the debtor on the contract before the debtor filed for bankruptcy. *See id.* at 350–52. Such a situation is not presented in the instant case. In *In re Triangle Laboratories, Inc.*, 663 F.2d 463 (3d Cir.1981), the Third Circuit held that a contract clause providing that the contract terminated on the filing of a bankruptcy petition could be given effect in a bankruptcy proceeding. *See id.* at 467–70. However, the Bankruptcy Code was amended immediately after the filing of the petition in that case to make such termination clauses unenforceable. *See id.* at 464–65. Moreover, the contracts at issue in the present case contain no such clauses. Therefore under United States bankruptcy law, New Line's contracts have not automatically terminated, and New Line is not prejudiced by being forced to pursue its claims in the Spanish insolvency proceeding.

## D.

■ New Line also urges the court to refuse to extend comity to the Spanish insolvency proceeding because the contracts at issue contain choice of venue clauses requiring actions arising out of them to be brought in New York and to be construed in accordance with New York law. However, the court has held previously that comity should be extended to foreign bankruptcy proceedings even when the contract at issue contains a domestic choice of venue clause. *See Kenner Prods. Co. v. Societe Fonciere et Financiere Agache–Willot*, 532 F.Supp. 478 (S.D.N.Y.1982) (Stewart, J.). Choice of venue clauses are not enforced when enforcement would be "unreasonable." *See M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972). For this reason, such clauses are not enforced in the face of a foreign bankruptcy proceeding, since in that circumstance considerations of "efficient and fair distribution of [the debtor's] assets" would make such enforcement unreasonable. *See Kenner*, 532 F.Supp. at 479, 480. The fact that the contracts at issue must be construed in accordance with New York law does not change this result. *See Cornfeld v. Investors Overseas Servs., Ltd.*, 471

F.Supp. 1255, 1261–62 (S.D.N.Y.) (Werker, J.), *aff'd without op.* 614 F.2d 1286 (2d Cir.1979). Therefore the court will not refuse to extend comity to the Spanish proceeding on the basis of the choice of venue clause.

## E.

Lastly, New Line argues that the Spanish court may defer to the choice of venue provision and refuse to exercise jurisdiction over any action arising out of the contracts, leaving New Line without a remedy. This argument, however, is merely conjectural. As yet there is no indication that the Spanish court will take this action. In fact, it is likely that it will in fact assert jurisdiction over the contracts at issue. It appears that Ivex has distributed some of New Line's films through sub-distributors in Spain. Some of the creditors in the Spanish proceeding may have claims relating to these subdistribution agreements. The presence of such creditors would militate in favor of the Spanish court exercising jurisdiction over New Line's distribution contracts with Ivex, regardless of the choice of venue clause. Therefore, it seems best not to refuse the extension of comity to the Spanish proceeding on the basis of a speculative possibility that the Spanish court will defer to the choice of venue provisions. Rather, the court will extend comity and dismiss this action without prejudice to plaintiff bringing another action if the Spanish court declines jurisdiction.

## III.

■ Ivex has also moved for an injunction staying New Line from suing Ivex in any court other than the Spanish court adjudicating Ivex's insolvency. While Ivex's motion raises a number of issues, among them the propriety of staying New Line from bringing suit in foreign fora, including fora in Spain other than the Barcelona court, the court need not address these issues because Ivex has not demonstrated one of the requirements for the issuance of preliminary injunctive relief: irreparable harm.

■ Irreparable harm must be shown before a preliminary injunction will issue. *See Jackson Dairy, Inc. v. H.P. Hood &*

*Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979). Ivex has offered no evidence that it will be irreparably harmed by a denial of its request for an injunction. Ivex has not alleged that New Line has sued it in any other forum, that New Line contemplates bringing such a suit or any other facts indicating that such a suit is likely to be brought. Since "[t]here must be more than a mere possibility or fear that the injury will occur," *New York State Nat'l Org. for Women v. Terry*, 704 F.Supp. 1247, 1262 (S.D.N.Y.) (Ward, J.), *modified* 886 F.2d 1339 (2d Cir.1989), *cert. denied* 495 U.S. 947 (1990), to justify a grant of injunctive relief, Ivex's motion for an injunction staying New Line from filing any other action against Ivex will be denied.

### CONCLUSION

Accordingly, Ivex's motion for an injunction restraining New Line from bringing suit against Ivex in any court other than the Spanish court adjudicating Ivex's insolvency is denied. Ivex's motion to dismiss based on the doctrine of international comity is granted, and this action is dismissed.

IT IS SO ORDERED.