A.W. HEMMINGS, Plaintiff-Appellant,

v.

Harold BARIAN, Defendant-Appellee.

No. 86–2372.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 9, 1987.

Decided June 12, 1987.

J. Timothy Gratz, Gratz Law Office, Madison, Wis., for plaintiff-appellant.

David P. Lowe, Friebert, Finerty & St. John, S.C., Milwaukee, Wis., for defendant-appellee.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff, Hemmings, filed a complaint against the defendant, Barian, in a federal district court in Wisconsin. The complaint has two counts. The first alleges a violation of the RICO statute (Racketeer Influenced and Corrupt Organizations), 18 U.S.C. §§ 1961 *et seq.* The second alleges common law fraud, and bases federal jurisdiction on both diversity of citizenship (28 U.S.C. § 1332) and the judge-made doctrine of pendent jurisdiction. On Barian's motion, the district judge dismissed the complaint. He held that the first count was barred by the applicable statute of limitations, which the judge held to be Wisconsin's three-year statute of limitations for securities fraud. Having dismissed that count before trial, he declined to exercise pendent jurisdiction over the second count. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Holding that diversity of citizenship had not been properly alleged, and refusing to allow Hemmings to amend the complaint to allege it properly, the judge then dismissed the second count for want of any jurisdictional foundation. Hemmings appeals from the dismissal of both counts.

We held recently that in deciding what statute of limitations to borrow for RICO (which has no statute of limitations of its own), we would find the closest counterpart in state law to RICO viewed as a whole rather than the closest counterpart to whatever "predicate acts" (e.g., fraud) were charged in the particular case. *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741 (7th Cir.1986). *Tellis* arose in Illinois, and we held that Illinois' two-year statute of limitations for actions for a statutory penalty would govern all RICO cases arising in that state. Barian concedes in view of *Tellis* that the district judge in the present case erred in using the statute of limitations for securities fraud merely because Hemmings' allegations make this case factually a securities fraud case. Barian asks us instead to apply Wisconsin's statute of limitations for actions for a statutory penalty, which is only two years. See Wis.Stat. § 893.93(2)(a). So the suit would still be barred. Hemmings, however, argues (as he also did in the district court) that the proper statute of limitations to apply is the six-year statute in Wisconsin's baby RICO statute, the Wisconsin Organized Crime Control Act, Wis.Stat. §§ 946.80 *et seq.;* see § 946.87. But, as Barian points out, that statute was passed after the last act alleged to violate (federal) RICO, and another Wisconsin statute provides that new statutes of limitations are to have prospective application only. See Wis.Stat. § 991.07. He concludes that the six-year statute is not available for borrowing in a case such as this which arose before the statute was enacted.

■ Barian's reasoning persuaded the district court to reject the six-year statute of limitations but it does not persuade us. When a federal court borrows a state statute of limitations for use in connection with a federal statute that does not have its own statute of limitations, the court is not applying state law; it is applying federal law. It looks to state law for guidance, but it does so simply because the creation of a statute of limitations is not considered a suitable judicial task. The length of a limitations period is arbitrary—you can't reason your way to it—and courts are supposed not to be arbitrary; when they are, they get criticized for it. See, e.g., Friendly, *A Postscript on Miranda,* in Benchmarks 266, 267–69 (1967). The only court-made limitations period (apart from limitations set by courts in their administrative capacity, such as limitations for filing motions where no limitation period is set by statute) is the equitable doctrine of laches, a flexible concept that bars a suit when the plaintiff has unreasonably delayed in bringing it and the delay has harmed the defendant. See *Piper Aircraft Corp. v. Wag-Aero, Inc.,* 741 F.2d 925, 935–41 (7th Cir.

1984) (concurring opinion). There is no fixed period of limitation. Courts are comfortable making judgments of reasonableness, but they are not comfortable fixing arbitrary time periods, so when they need a fixed time period for an action at law they borrow a period fixed by a legislature, albeit fixed by it for a different purpose. Of course, in deciding which statute of limitations to borrow, the court is choosing among arbitrary periods set by a legislature; but the choice itself is not arbitrary. See, e.g., *Smith v. City of Chicago*, 769 F.2d 408 (7th Cir.1985).

Nothing in this analysis suggests that the federal court should feel bound by the details of the borrowed statute of limitations. "Inevitably our resolution of cases or controversies requires us to close interstices in federal law from time to time, but when it is necessary for us to borrow a statute of limitations for a federal cause of action, we borrow no more than necessary." *West v. Conrail*, — U.S. —, 107 S.Ct. 1538, 1542, 95 L.Ed.2d 32 (1987) (footnote omitted). The analysis would, however, be different if Count I were a diversity rather than federal-question count. For purposes of the *Erie* doctrine, the statute of limitations is substantive rather than procedural, and the federal court therefore applies state law—it doesn't just borrow it. *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

Two examples will illustrate the principle expressed in the *West* opinion:

(1) In *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80 (2d Cir.1961), the Second Circuit, in an opinion by Judge Friendly, held the federal common law rule that fraudulent concealment tolls the statute of limitations applicable to a borrowed state statute of limitations used in a federal antitrust suit. (This was before there was a federal antitrust statute of limitations.) We have generalized this principle (perhaps incorrectly, as will appear) as follows: into every borrowed state statute of limitations is read a federal common law rule of equitable tolling. See *Suslick v. Rothschild Securities Corp.*, 741 F.2d

1000, 1004 (7th Cir.1984), and cases cited there.

(2) In *Stevens v. Gateway Transport. Co.*, 696 F.2d 500 (7th Cir.1982), we borrowed, for use in suits under section 301 of the Taft-Hartley Act, Illinois' 90–day statute of limitations for suits to set aside awards by arbitrators, even though the Illinois statute expressly excepts labor arbitration. We did the same thing in *Plumbers' Pension Fund, Local 130 v. Domas Mechanical Contractors, Inc.*, 778 F.2d 1266, 1269 n. 1 (7th Cir.1985), though without citing *Stevens*—maybe because *Stevens* had been overruled, in *Storck v. International Brotherhood of Teamsters, Local Union No. 600*, 712 F.2d 1194, 1196 (7th Cir.1983) (per curiam). The overruling of *Stevens*, however, was on a ground unrelated to the present case. *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), had held that where the plaintiff in a section 301 case is an employee complaining that his union failed in its duty of fair representation toward him, the proper statute of limitations to borrow is not a state statute of limitations at all but the National Labor Relations Act's six-month statute of limitations for unfair labor practice complaints.

In *Stevens* and *Domas* we made an independent judgment that arbitrations subject to the Illinois statute are the closest counterpart to arbitrations subject to the federal statute, and no more was necessary to warrant borrowing the limitations period in the former for use with the latter. See also *Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 251 (7th Cir.1986). This case is the same. The Wisconsin RICO statute is the closest counterpart in Wisconsin law to the federal RICO statute. The view of the Wisconsin legislature with regard to the retroactive application of the statute of limitations in its RICO statute is irrelevant to this comparison, and not only or mainly because that view is expressed in a separate statute, applicable to the retroactive application of statutes of limitations generally, rather

than in the state RICO statute itself. The purpose of forbidding the retroactive application of a new statute of limitations is to protect expectations reasonably engendered by the statute of limitations in force when the events giving rise to the litigation occurred. No federal RICO litigant (plaintiff or defendant) could have had reasonable expectations about the applicable statute of limitations when this case arose, because the question of the applicable statute was (and is) intensely contested and highly uncertain. The Supreme Court has granted certiorari to resolve the conflict between circuits that follow our approach in *Tellis* and circuits that, like the district judge in this case, hold that the proper limitations period to borrow is the one from the state statute that involves conduct most like the conduct alleged by the RICO plaintiff. Compare *Silverberg v. Thomson McKinnon Securities, Inc.*, 787 F.2d 1079, 1083 (6th Cir.1986), with *Malley-Duff & Associates, Inc. v. Crown Life Ins. Co.*, 792 F.2d 341 (3d Cir.), cert. granted under the name of *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 573 (1986).

We are mindful that "in virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Johnson v. Railway Express Agency*, 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975); see also *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Chardon v. Fumero Soto*, 462 U.S. 650, 660–62, 103 S.Ct. 2611, 2618–2619, 77 L.Ed.2d 74 (1983); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *West v. Conrail, supra*, 107 S.Ct. at 1542 n. 6. In *Norris v. Wirtz*, 818 F.2d 1329, 1331–1332 (7th Cir.1987), we hinted strongly that the *Moviecolor-Suslick* line of cases was untenable in light of *Johnson* and *Tomanio*. But Wisconsin's decision not to make changes in its statutes of limitations retroactive is not an "exception" that we are bound, under *Johnson*, to follow. First, *Johnson* and the cases following it are civil rights cases governed by 42 U.S.C. § 1988, which, as stressed in *Tomanio*, see 446 U.S. at 484–85, 100 S.Ct. at 1795, and in *Chardon*, see 462 U.S. at 661–62, 103 S.Ct. at 2618–2619, requires federal courts in civil rights cases to use state common law (as modified by the state's constitution or statutes) where federal law is "deficient" in its provisions. Second, and more important, the issues of tolling and of retroactivity are different, only the first being inseparable from the length of the limitations period itself. The more generous the tolling provisions are, the shorter that period can be made without working an injustice to plaintiffs; and, similarly, the longer the period of years, the less appropriate are generous tolling provisions. Since the actual length of time within which suit must be brought thus depends on the generosity of the tolling provisions as well as on the period of years, to borrow the latter without the former could distort the state's determination regarding that length of time. But no one is proposing to borrow just the six years in the Wisconsin statute and ignore tolling provisions that may make it the equivalent of a shorter or longer statute of limitations with different tolling provisions, just as no one in *Stevens* was proposing to borrow just the 90 days from the Illinois statute and ignore the associated tolling provisions. *Stevens, Domas*, and the present case are stronger cases for selective borrowing than *Moviecolor* and *Suslick*, whose authority may, as we suggested in *Norris v. Wirtz*, have been undermined by *Johnson*. We hold that the six-year statute of limitations is applicable to this case despite Wisconsin's law on retroactive application of statutes of limitations.

■ None of Hemmings' theories of liability is time-barred if as we believe the six-year statute of limitations is applicable. But the district court hinted, and on appeal Barian has expanded on the hint, that, even so, the suit should be dismissed for failure

to state a claim under the RICO statute. The section of RICO stressed by Hemmings makes it "unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise...." 18 U.S.C. § 1962(a). The complaint alleges that Hemmings owned most of the stock of a company called FPC Holding Corporation, and agreed to sell it to Harmony, Inc., which was controlled by Barian, for a cash down payment plus five annual cash payments and other consideration. Instead of making the annual cash payments Barian used the money thus saved to fund a new entity controlled by him, Decade Investment Corporation. Decade assumed Harmony's contractual obligations to Hemmings, and Hemmings sued Decade and obtained a judgment, but it proved uncollectible. Hemmings alleges, and for purposes of considering the legal sufficiency of his complaint we assume, that Barian from the start never intended to pay Hemmings for FPC. If so, this was fraud. We may also assume that this fraud might amount to a criminal violation of federal securities law and therefore count as "racketeering activity" in the special sense that these words bear in RICO, see 18 U.S.C. § 1961(1), and that there were enough different acts of fraudulent dealing (because there were other acquisitions, as we shall see) to constitute "a pattern of racketeering activity," see 18 U.S.C. § 1961(5); *Marks v. Pannell Kerr Forster*, 811 F.2d 1108, 1112 (7th Cir.1987); *Elliott v. Chicago Motor Club Ins.*, 809 F.2d 347, 350 (7th Cir.1987); *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974–77 (7th Cir.1986); *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149, 154–55 (4th Cir.1987). But all this is not enough to make out a violation of section 1962(a). There must in addition be investment, in another enterprise, of income *derived from the pattern of racketeering activity*.

The complaint does not allege that Barian invested income that he derived from fraud. Decade is an enterprise but Barian is not charged with having used income derived from fraud to fund Decade. He may have used income that he owed Hemmings—the balance of the purchase price for FPC—but there is no suggestion that *that* income came from fraud. Its source, so far as appears, was proper and aboveboard. The fraud was in promising to pay Hemmings the balance of the agreed purchase price for FPC, when Barian had no intention of ever paying it. Hemmings does not and cannot claim that he has a lien or any other security or property interest in the money that Barian used to fund Decade. That was not money extracted from Hemmings by fraud. So far as the complaint alleges, it was lawful income; and it is not a violation of RICO to invest such income in an "enterprise."

We have been speaking so far of a possible violation of section 1962(a). Section 1962 has other subsections, defining other offenses, and it is conceivable that the complaint (which does not cite any of section 1962's subsections) might state a claim under one of them, specifically subsection (b), which makes it "unlawful for any person through a pattern of racketeering activity ... to acquire ... control of any enterprise" engaged in or affecting interstate or foreign commerce. The complaint alleges a series of fraudulent acquisitions (the acquisition of FPC from Hemmings being one member of the series). Yet in his opening brief in this court, and at argument, Hemmings implied that the only violation he was alleging was a violation of 1962(a); he put his best foot forward, and stumbled anyway. But since, as we are about to see, the case must be remanded, we leave it to the district judge to decide in the first instance whether Hemmings has waived any other theories of violation and, if not, whether they have any merit.

■ Since at least part of the RICO count was properly dismissed before trial and the rest may well fall out before trial too, it is important to consider whether the common law count can survive on the basis of diversity of citizenship, as Hemmings argues, rather than just on the basis of

pendent jurisdiction, a ground normally unavailable if the main claim is disposed of before trial. The complaint alleges that the plaintiff is a citizen of Florida, that the defendant "resides" at an address in Wisconsin, that the plaintiff and the defendant "are citizens of different states," and that the amount in controversy between them exceeds $10,000. This is a clumsy attempt to invoke diversity jurisdiction, and the district court was right to question it. The fact that Barian "resides" in Wisconsin doesn't show that he is a citizen of Wisconsin; maybe he has multiple residences—and maybe one of them is in Florida and he is a citizen of Florida, like Hemmings. Moreover, the statute requires that the amount in controversy exceed $10,000 exclusive of costs and interest, and this allegation is missing; maybe Hemmings needs costs and interest to get above $10,000.

The concern with the amount in controversy is finicky, however; Hemmings is seeking hundreds of thousands of dollars in damages, and there is no reason to doubt that if he prevailed on his common law fraud claim he would obtain a judgment in excess of $10,000 (exclusive of costs and interest). See *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659 (7th Cir.1982). The allegations of citizenship are more troublesome. But this is not a case of failing to allege diversity of citizenship; it is a case of a confusing pleading which raises doubt whether there really is diversity; the correct response is to put the plaintiff to his proof—to make him submit an affidavit with respect to the citizenship of the parties. See, e.g., *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986); *Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553 (5th Cir.1985); cf. *Matchett v. Wold*, 818 F.2d 574 (7th Cir.1987). Dismissing the complaint was overkill.

We commend the district judge for his vigilance in policing the district court's jurisdiction. The first rule of judicial self-restraint in the federal courts is that those courts respect the limitations that the Constitution and Congress have placed on federal judicial power. This rule requires that a complaint which fails to allege federal jurisdiction be dismissed (with or without

leave to amend, depending on the circumstances). But if jurisdiction is alleged and a question is raised—either by a party or as here by the district judge on his own initiative—about the truth of the allegation, the proper course is not to dismiss outright but to determine whether federal jurisdiction in fact exists. All that would have been required here, at least in the first instance, would have been to ask the plaintiff to submit an affidavit.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.