174 F.3d 987
 99 Cal. Daily Op. Serv. 2515, 1999 Daily
Journal D.A.R. 3282
Christian Weaver TWORIVERS, Plaintiff-Appellant,
v.
Samuel A. LEWIS; Velasquez, Lt.; Fernandez, Sgt.; CSO
Kern; Kevin Scott Lewis; Ratliff, RN; Raul
Rodriguez-Bores, Dr.; Barbara Major, Nurse; B. Goodman,
RN; S. Walters, NA, Defendants-Appellees.
 No. 97-15844.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Dec. 8, 1998.*
Decided April 6, 1999.
 
 Christian Weaver TwoRivers, Winslow, Arizona, in pro se for plaintiff-appellant.
 Wanda E. Hofmann and Bruce E. Skolnik, Assistant Attorneys General, Tucson, Arizona, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Richard M. Bilby, Chief District Judge, Presiding. D.C. No. CV-96-00598-RMB.
 Before: BRIGHT,** FLETCHER and THOMPSON, Circuit Judges.
 BRIGHT, Circuit Judge:
 
 
 1
 Plaintiff Appellant Christian Weaver TwoRivers, an Arizona prisoner, appeals the district court's dismissal of his 42 U.S.C. § 1983 claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, on grounds that he failed to file suit within the applicable two year statute of limitations. TwoRivers' claim is time barred unless he can obtain the benefit of a provision under Arizona law which tolled the two year limitations for Arizona prisoners until after discovery of the prisoner's right to sue. Such statutory grace existed at the time TwoRivers discovered his right to bring his § 1983 action. However, before TwoRivers filed suit, Arizona amended its law deleting this grace period and requiring prisoners to bring their action within two years from the date of accrual. We conclude that the amended statute does not apply retroactively to bar TwoRivers' suit, and, therefore, we reverse and remand.
 
 I. FACTS AND PROCEDURAL BACKGROUND
 
 2
 TwoRivers' § 1983 claim arose from alleged deliberate indifference to his serious medical needs by Arizona Department of Corrections ("ADOC") employees after TwoRivers underwent a surgical procedure to remove a cancerous growth while incarcerated at the Tucson prison complex. We briefly review the factual background of TwoRivers' claim.[1]
 
 
 3
 On July 20, 1994, appellee Dr. Kevin Scott Lewis removed a cancerous growth from TwoRivers' back. Suffering from severe infection, ADOC transferred TwoRivers from the Tucson prison complex to St. Mary's Hospital where doctors treated his infection with intravenous antibiotics and bleach baths. ADOC subsequently transferred TwoRivers to another prison facility, the Central Unit at Florence, where he continued to undergo bleach baths, this time in bath tubs allegedly encrusted in fecal matter and what appeared to be scabs from other patients. These incidents form the basis for his claim. The incidents occurred prior to September 14, 1994, the date of TwoRivers' transfer back to the Tucson complex after he had received post-operative medical care.[2]
 
 
 4
 At the time of these events, the former § 12-502 of the Arizona Revised Statutes (A.R.S.) tolled the statute of limitations for prisoners until a prisoner discovered the right to bring the action or should have discovered that right with the exercise of reasonable diligence.[3] See Vega v. Morris, 184 Ariz. 461, 464, 910 P.2d 6, 9 (1996) (en banc) (explaining that under former A.R.S. § 12-502, awareness of the legal right to assert a claim ends the disability provided to prisoners, not cognizance of the facts giving rise to the claim). Prior to the time TwoRivers filed suit but after he had discovered his right to bring a § 1983 claim, the Arizona legislature amended former A.R.S. § 12-502, deleting the special tolling provision for prisoners. The amended statute became effective on July 20, 1996.[4]
 
 
 5
 On October 8, 1996, TwoRivers filed suit in federal district court asserting a claim under § 1983.[5] TwoRivers alleged that the named defendants had been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment of the United States Constitution. TwoRivers further alleged that he had first learned of his right to file suit on October 26, 1994 (less than two years earlier), when his attorney at the time advised him of that right. The ADOC defendants challenged TwoRivers' claim on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the defendants' motion, dismissing TwoRivers' amended complaint with prejudice. It reasoned that under the amended A.R.S. § 12-502, TwoRivers had failed to file his § 1983 claim in a timely manner. TwoRivers had filed suit over two years and three weeks after September 14, 1994, the date of TwoRivers' transfer back to the Tucson complex after receiving the alleged improper medical care. TwoRivers now appeals this order of dismissal.
 
 II. STANDARD OF REVIEW
 
 6
 We review de novo a dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295 (9th Cir.1998). In such a case, we must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). Dismissal on statute of limitations grounds can be granted pursuant to Fed.R.Civ.P. 12(b)(6) "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir.1991) (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir.1980)).
 
 III. DISCUSSION
 
 7
 On appeal, TwoRivers claims that the district court erred by applying the amended A.R.S. § 12-502 and dismissing his § 1983 claim. In support of this contention, TwoRivers asserts that his claim accrued prior to the amendment of that statute. Therefore, according to TwoRivers, the district court should have applied the former A.R.S. § 12-502 and tolled commencement of the statute of limitations until October 26, 1994, the date his attorney apprised TwoRivers of his right to file suit. TwoRivers further argues that since he filed suit on October 8, 1996, less than two years after he learned of that right on October 26, 1994, proper application of the former A.R.S. § 12-502 would have precluded the district court from dismissing his claim on statute of limitations grounds. Before examining TwoRivers' argument on its merits, the court first turns to the time limitations governing § 1983 claims.[6]
 
 A.
 
 8
 Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims in the forum state. See Wilson v. Garcia, 471 U.S. 261, 279-80, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). In Arizona, the courts apply a two-year statute of limitations to § 1983 claims. See Marks v. Parra, 785 F.2d 1419, 1420 (9th Cir.1986) (citing A.R.S. § 12-542). But in borrowing a state statute of limitations for a federal cause of action, "we borrow no more than necessary." West v. Conrail, 481 U.S. 35, 39-40, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). Consistent with this maxim, federal, not state, law determines when a civil rights claim accrues. See Elliott v. City of Union City, 25 F.3d 800, 801-802 (9th Cir.1994). Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996). Here, TwoRivers knew or had reason to know of the ADOC employees' deliberate indifference to his medical needs by September 14, 1994, the date of TwoRivers' transfer back to the Tucson complex after receiving the alleged improper medical care. TwoRivers filed suit on October 8, 1996, more than two years after TwoRivers' § 1983 claim had accrued. Therefore, as we have observed, the two-year statute of limitations would bar the present action unless TwoRivers' incarceration tolled the limitations period sufficiently to permit him to proceed with this suit.
 
 
 9
 In actions like this one, where the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules. See Hardin v. Straub, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989); Board of Regents of the Univ. of New York v. Tomanio, 446 U.S. 478, 483-84, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Under former § 12-502, prisoners whose claims accrued while incarcerated were entitled to tolling until the prisoner knew or had reason to know that he or she had a right to file suit. By contrast, the amended § 12-502 deletes this provision for prisoners and subjects them to the same rules as most other § 1983 plaintiffs. Applying the tolling provision in the former A.R.S. § 12-502, TwoRivers filed suit within two years of October 26, 1994, the date that he learned of his right to bring suit, and thus within the statute of limitations for § 1983 actions filed in Arizona. But under the amended A.R.S. § 12-502, the clock began to run on September 14, 1994, the date of his transfer back to the Tucson complex after receiving post-operative care and when his cause of action accrued under the analysis of the district court. In short, the choice of the applicable limitations statute dictates the result in this case. The issue before us is whether the amended § 12-502 should be applied retroactively to bar this plaintiff's claim.
 
 B.
 
 10
 At the outset, we observe that neither the district court, nor the parties on appeal, addressed the threshold issue of whether a federal court borrowing a state statute of limitations also borrows the state retroactivity law. The district court applied the current Arizona law in ascertaining the appropriate limitation period and the related tolling provisions. The district court, however, did not discuss its decision to apply Arizona retroactivity law. Generally, where Congress does not create a federal statute of limitations, we look to state law for limitations provisions, see Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 463-64, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), because "the creation of a statute of limitations is not considered a suitable judicial task." Hemmings v. Barian, 822 F.2d 688, 689 (7th Cir.1987). We also reference corresponding state law tolling provisions under these circumstances, recognizing that "the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." Tomanio, 446 U.S. at 485-86. "Since 'the actual length of time within which suit must be brought ... depends on the generosity of the tolling provisions as well as on the period of years, to borrow the latter without the former could distort the state's determination regarding that length of time.' " Mouradian v. John Hancock Cos., 930 F.2d 972, 974 (1st Cir.1991) (quoting Hemmings, 822 F.2d at 691).
 
 
 11
 But our reliance on state law in this context is not unlimited. The Supreme Court has admonished us to "borrow no more [state law] than necessary" when using a state statute of limitations and its related tolling provisions to implement federal statutory law. West, 481 U.S. at 39-40. The Supreme Court also has stated that "[i]n borrowing statutes of limitations for other federal claims, this court has generally recognized that the problem of characterization 'is ultimately a question of federal law.' " Wilson, 471 U.S. at 269-270 (citation omitted). Thus, where a court applies a state statute of limitations in construing a federal substantive claim, federal common law should fill the gaps in applying federal statutory law, except in very limited circumstances. See id. at 268-69 ("Only the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law."); see also Vaughan, 927 F.2d at 480 (holding that federal law determines when a cause of action under § 1983 accrues and the statute of limitations begins to run). Moreover, when a federal court uses a state limitations period in connection with a federal statute without its own statute of limitations, the court is applying federal, not state law. See Hemmings, 822 F.2d at 689. In addition, the rationale underpinning the use of state tolling periods when borrowing a state limitations period--to respect the "[s]tate's wisdom in setting a limit, and exceptions thereto," Johnson, 421 U.S. at 464; accord Tomanio, 446 U.S. at 485-86,--does not hold for state retroactivity rules. Failure to borrow retroactivity rules, unlike tolling periods, does not give rise to the risks associated with selective borrowing of tolling rules.
 
 
 12
 Thus, in view of the principles set forth in West, Wilson, and Vaughan, we apply federal law, not state law, in deciding whether to apply the amended § 12-502 retroactively. See West, 481 U.S. at 39; Wilson, 471 U.S. at 269; Vaughan, 927 F.2d at 480; see also Hemmings, 822 F.2d at 691 (borrowing state limitations period and tolling rules but declining to borrow state retroactivity rules in construing federal RICO statute, which is also without a statutory period).
 
 C.
 
 13
 We examine the contours of federal retroactivity law. Absent clear legislative intent to the contrary, a presumption exists against retroactive application of new statutes. See Landgraf v. USI Film Products, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (stating that "the presumption against retroactive legislation is deeply rooted in our jurisprudence"); Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) ("Retroactivity is not favored in the law."). Although "prospectivity remains the appropriate default rule," Landgraf, 511 U.S. at 272, "deciding when a statute operates 'retroactively' is not always a simple or mechanical task." Id. at 268.
 
 
 14
 The three stage analysis set forth in Landgraf assists the courts in this inquiry. See Jeffries v. Wood, 114 F.3d 1484, 1494 (9th Cir.1997) (citing Landgraf, supra, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229). We first determine whether the legislative body expressly stated its intent to apply the new statute retroactively or prospectively. Landgraf, 511 U.S. at 280. Without clear language directing that we apply the new statute retroactively, the court next discerns whether the new statute would have retroactive effect. Id. Three factors inform our decision in this regard: whether the statute "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to a transaction already completed." Id.; Hughes Aircraft Co. v. United States ex rel. Schumer, 520 U.S. 939, 947, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (stating that the three factors qualify as a "sufficient, rather than a necessary, condition for invoking presumption against retroactivity.") (emphasis in original). Ultimately, in this second inquiry, we must apply "ordinary judicial principles" and rely upon our "sound instincts" to determine whether "the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70. Third and finally, if the court determines that the statute operates retroactively, the traditional presumption in favor of prospectivity precludes application of the new statute "absent clear congressional intent favoring such a result." Id. at 280.
 
 
 15
 A plain reading of the existing A.R.S. § 12-502 and its legislative history evidence no legislative intent that this statute should operate retroactively so as to shorten the time of a claim that had already accrued. With the statute and its legislative history silent on this question, we turn to the second stage of this analysis in which the court examines whether the newly enacted statute has retroactive effect. To assist us in this inquiry, Landgraf identified three types of laws which generally do not have retroactive effect: those authorizing prospective relief, those conferring or removing jurisdiction, and those statutes properly characterized as procedural. See id. at 273-74. Thus, in contrast to statutes affecting settled contract and property rights, Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 835, amended by, 125 F.3d 1281 (9th Cir.1997), procedural statutes generally may be applied retrospectively without giving rise to concerns about retroactivity. See Landgraf, 511 U.S. at 285 n. 37 ("We have sometimes said that ... new 'procedural' [rules] should presumptively apply to pending cases.").
 
 
 16
 But the concerns underlying the presumption against retroactivity are not limited to substantive statutes. As acknowledged by Landgraf, "the mere fact a new rule is procedural does not mean that it applies to every pending case." Id.; see also Chenault v. U.S. Postal Serv., 37 F.3d 535, 539 (9th Cir.1994) ("Regardless of whether a statute is 'substantive' or 'procedural', it may not apply to cases pending at the time of enactment if the new statute would prejudice the rights of one of the parties."); Landgraf, 511 U.S. at 275 n. 29 ("[W]e do not restrict the presumption against statutory retroactivity to cases involving 'vested rights'.... Nor do we suggest that concerns about retroactivity have no application to procedural rules."). In short, "[c]ourts must look to the nature and posture of an individual case" to determine whether the statute has retroactive effect. Jeffries, 114 F.3d at 1498.
 
 
 17
 In Chenault, this court considered whether to apply retroactively an amended provision of the Civil Rights Act of 1964, which extended the filing period from thirty to ninety days in employment discrimination cases. Chenault, 37 F.3d at 537. Applying the principles set forth in Landgraf, we concluded that the provision could not be applied retroactively to revive a claim otherwise barred under the old statutory scheme, despite our determination that the statute of limitations provision was procedural. Id. at 538 (citing Gonzalez v. Aloha Airlines, Inc., 940 F.2d 1312, 1316 (9th Cir.1991)). We declined to rely exclusively on the substantive/procedural dichotomy, reasoning that characterization of a statute into one of these categories is not dispositive of whether retroactive application of a statute is appropriate. See Chenault, 37 F.3d at 539; see also Landgraf, 511 U.S. at 275 n. 29.
 
 
 18
 Likewise, although both the former and amended A.R.S. § 12-502, like other tolling statutes, are generally considered procedural, see Chenault, 37 F.3d at 539, that label does not preclude us from examining whether the amended § 12-502 has retroactive effect and whether it should be applied retroactively. This court has consistently rejected the retroactive application of procedural statutes which result in manifest injustice. Id. In addition, as recognized in Landgraf and Jeffries, certain statutes implicate both substantive and procedural issues. See Landgraf, 511 U.S. at 280-81; see also Jeffries, 114 F.3d at 1498. Thus, we decline to classify the amended § 12-502 as per se falling within that category of statutes without retroactive effect. See Jeffries, 114 F.3d at 1498. Instead, we look beyond the narrow categorization of statutes as procedural or substantive and incorporate other judicial principles into our analysis to determine whether to apply this statute retroactively.
 
 
 19
 The Supreme Court instructed that we focus our inquiry in the second part of this analysis on whether the newly enacted statute altered the legal consequences of the events giving rise to the claimant's suit. See Landgraf, 511 U.S. at 269-70. As a practical consequence, application of amended A.R.S. § 12-502 to this case bars TwoRivers from bringing suit while under former A.R.S. § 12-502, TwoRivers' October 1996 filing is timely. By foreclosing a cause of action which existed prior to the amendment, retroactive application of amended § 12-502 deprives TwoRivers of his right to file suit embodied in former § 12-502, which existed less than three months prior to the date he filed suit. Cf. Chenault, 37 F.3d at 539 ("[A] newly enacted ... statute of limitations may not be applied retroactively to revive a plaintiff's claim that was otherwise barred ... because to do so would 'alter the substantive rights' of a party ....") (emphasis added). We need not go so far as to hold that TwoRivers has a "vested right" in his tolled two-year statute of limitations. See Chase Secs. Corp. v. Donaldson, 325 U.S. 304, 311-14, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (holding that the lapse of a limitations period does not provide a party defendant with a vested right in immunity from suit). It is enough to conclude that retroactive operation of the new statute results in "manifest injustice" and therefore its application here is inappropriate. See Chenault, 37 F.3d at 539 ("A newly enacted statute that shortens the applicable statute of limitations may not be applied retroactively to bar a plaintiff's claim that might otherwise be brought under the old statutory scheme because to do so would be manifestly unjust."); see also Usher, 828 F.2d at 560 (rejecting retroactive application of Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), where such application would shorten the limitations period for § 1983 actions in California).
 
 
 20
 Relying on our "sound instincts," as instructed by Landgraf, it is apparent that application of the amended A.R.S. § 12-502 would not only be manifestly unjust, but would have genuine retroactive effect. See Calderon v. United States Dist. Court, 128 F.3d 1283, 1286-87 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998) (applying Antiterrorism and Effective Death Penalty Act's ("AEDPA") newly-enacted one-year limitation period from effective date of AEDPA "would impermissibly 'attach[ ] new legal consequences to events completed before its enactment' "), overruled on other grounds, Calderon, 163 F.3d 530 (9th Cir.1998) (en banc); see also United States v. Simmonds, 111 F.3d 737, 745-46 (10th Cir.1997) ("we hold application of the [AEDPA's] new time period to [petitioner's] § 2255 motion without first affording him a reasonable time to bring his claim impermissibly retroactive."); United States v. Craycraft, 167 F.3d 451, 455 (8th Cir.1999) ("a presumption against retroactive legislation applies whenever a claim depends upon a statute which was enacted after the events which gave rise to the claim"); Burns v. Morton, 134 F.3d 109, 111 (3d Cir.1998) (same).
 
 
 21
 Since Wilson, § 1983 plaintiffs in Arizona have received two years to file their § 1983 claims. See Wilson, 471 U.S. at 275-76. Prisoners under disability were entitled to the same period from the date they knew or had reason to know of their right to file suit. TwoRivers filed suit on October 8, 1996, less than two years after his attorney advised him of his right to bring an action under the circumstances of his case. Although TwoRivers could have brought his claim at an earlier time, Arizona law imposed no obligation on him to do so until July 20, 1996, the effective date of the amended statute, less than three months prior to the date he filed suit. See Landgraf, 511 U.S. at 265 ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and conform their conduct accordingly"); see, e.g., General Motors Corp. v. Romein, 503 U.S. 181, 191, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).
 
 
 22
 To apply the amended § 12-502 retroactively, as proposed by Arizona, would cut off TwoRivers' claims when, without the amendment, TwoRivers still could sue at any time during the following three months. Such application would foreclose TwoRivers' remedy prematurely, without providing him with a reasonable time to file suit after the amendment. See Ochoa v. Hernandez y Morales, 230 U.S. 139, 161-162, 33 S.Ct. 1033, 57 L.Ed. 1427 (1913) ( "[S]tatutes of limitations ... may be modified by shortening the time prescribed, but only if ... a reasonable time still remains for the commencement of an action before the bar takes effect."); see, e.g. Block v. North Dakota ex rel. Bd. of University and School Lands, 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). We hold that a time period of less than three months does not constitute a reasonable time for a prisoner to file suit.[7] Accordingly, without clear legislative guidance urging retroactive application of the amended statute, we apply the former § 12-502 to this case, and we conclude that TwoRivers filed his suit in a timely manner.
 
 D.
 
 23
 We recognize that DeLuna v. Farris, 841 F.2d 312 (9th Cir.1988) reached a contrary result in construing a prior amendment to A.R.S. § 12-502. In DeLuna, we applied a prior amendment to A.R.S. § 12-502 retroactively to time bar the plaintiff DeLuna's § 1983 claim. DeLuna's claim, like that in this case, had accrued prior to the effective date of the amendment but had been filed subsequent to that date. Although this court acknowledges the factual likeness of this case to DeLuna, we, nevertheless, are not bound to follow the holding in that case for two reasons. First, DeLuna applied Arizona retroactivity law in reaching its conclusion without discussing whether federal or state retroactivity principles should govern the result in that case. Second, the Arizona Court of Appeals subsequently rejected DeLuna 's decision to apply the amended § 12-502 retroactively, holding that Arizona law dictated that the amendment be applied prospectively, not retroactively. See Vaughan, 927 F.2d at 479 n. 3 (citing Zuck v. State, 159 Ariz. 37, 41, 764 P.2d 772, 776 (App.1988)).[8]
 
 
 24
 Assuming arguendo, therefore, that we were to apply Arizona retroactivity law to this case, this court would be bound by the Zuck decision, not DeLuna, on an issue of Arizona state law. See Vaughan, 927 F.2d at 480 ("Where an intermediate appellate court has decided an issue of state law, that decision is not to be disregarded by a federal court unless it is convinced ... that the highest court of the state would decide otherwise.") (citation omitted). Taking this point to its logical conclusion, under the principles enunciated in Zuck, "plaintiff was obligated to file his civil rights [claim] ... within the two-year period of A.R.S. § 12-542(1) ..., from the time after the effective date of the amendment that he discovered or with reasonable diligence should have discovered his right to bring th[at] claim[ ]." Zuck, 159 Ariz. at 40, 764 P.2d at 775. TwoRivers filed suit on October 8, 1996, within two years from the date that he discovered his right to file suit. Therefore, we conclude that even under Arizona law TwoRivers would have filed his § 1983 claim in a timely manner.IV. CONCLUSION
 
 
 25
 The district court erred by applying the amended A.R.S. § 12-502 to this case and dismissing TwoRivers' claims as time-barred. TwoRivers filed suit within the two-year limitations period for § 1983 claims in Arizona. Accordingly, we REVERSE and REMAND to the district court for further proceedings on the merits of TwoRivers' § 1983 claim. We further award TwoRivers his costs on appeal.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App. 34-4(a2)
 
 
 **
 The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 TwoRivers named the following in his amended complaint as defendants: Samuel A. Lewis, former director of the ADOC; Dr. Kevin Lewis, his treating physician at the Tucson prison complex; Lieutenant Velasquez; Sergeant Fernandez; C.S.O. Kern; Nurse Major; Nurse Ratliff; Nurse Goodman; NA Walters; Dr. Raoul Rodriguez-Bores at the Cimarron Unit; and L.P.N. Bottineau
 
 
 [2]
 In this proceeding, all parties assume that TwoRivers' right to bring his action accrued prior to September 14, 1994
 
 
 [3]
 Former A.R.S. § 12-502 provided in relevant part:
 § 12-502. Effect of minority, insanity or imprisonment.
 B. If a person entitled to bring an action other than those set forth in article 2 of this chapter is at the time the cause of action accrues imprisoned, the period of such disability shall exist only until such time as the person imprisoned discovers the right to bring the action or with the exercise of reasonable diligence should have discovered the right to bring the action, whichever occurs first, and such person shall have the same time after the disability ceases to exist which is allowed to others.
 A.R.S. § 12-502 (1992), amended by, A.R.S. § 12-502 (West Supp.1998).
 
 
 [4]
 A.R.S. § 12-502 now provides:
 § 12-502. Effect of minority or insanity
 If a person entitled to bring an action other than those set forth in article 2 of this chapter is at the time the cause of action accrues either under eighteen years of age or of unsound mind, the period of such disability shall not be deemed a portion of the period limited for commencement of the action. Such person shall have the same time after removal of the disability which is allowed to others.
 A.R.S. § 12-502 (West Supp.1998).
 
 
 [5]
 TwoRivers subsequently filed an amended complaint after the district court dismissed TwoRivers' original complaint for failure to allege exhaustion of his administrative remedies under the ADOC grievance procedure. The initial filing date controls the instant proceedings
 
 
 [6]
 In light of our holding in this case, we decline to address other arguments advanced by TwoRivers on appeal
 
 
 [7]
 Our conclusion is consistent with the courts' treatment of the recently enacted one-year limitations period under AEDPA. Rather than applying AEDPA's one-year limitations period to cut off prisoners' rights to file for habeas relief, this court, along with our sister circuits, have uniformly provided petitioners with a one-year grace period, commencing on the effective date of AEDPA, to file a first § 2254 petition or a § 2255 motion. See, e.g., Craycraft, 167 F.3d at 455; Ross v. Artuz, 150 F.3d 97, 100-03 (2d Cir.1998); United States v. Flores, 135 F.3d 1000, 1006 (5th Cir.1998); Burns, 134 F.3d at 111; Calderon, 128 F.3d at 1283, 1286-87; Simmonds, 111 F.3d at 745-46; Lindh v. Murphy, 96 F.3d 856, 866 (7th Cir.1996) (en banc), rev'd on other grounds, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)
 
 
 [8]
 Zuck held, in part, that amended statutes under Arizona law were to be given prospective effect to extend the limitations period on claims existing at the time the amendment became effective. See Zuck, 159 Ariz. at 41, 764 P.2d at 776