*169 ORDER REMANDING ENROLLMENT COMMITTEE DETERMINATION
KATHARINE ENGLISH, Chief Judge.
I. ISSUE PRESENTED
Petitioner is appealing the Enrollment Committee’s decision to deny the application for enrollment filed on behalf of her daughter, Suellen Marie Svetich, in the Confederated Tribes of the Grand Ronde Community of Oregon. Petitioner’s claims on appeal include that the* Enrollment Committee’s decision was arbitrary and capricious, or violated her daughter’s constitutional rights under federal law because the Enrollment Committee retroactively applied the wrong version of the Tribal Constitution in making its enrollment determination. Petitioner claims that *170 the Constitution in effect at the time her daughter’s application was submitted should have been applied by the Enrollment Committee in its enrollment determination.
II.BACKGROUND
On July 27, 1999, the Bureau of Indian Affairs (BIA) conducted an election by eligible Tribal members to amend the Tribal Constitution. At the election, the amendment was approved by a considerable majority of the Tribal membership. On September 14, 1999, the Secretary of the Interior approved the amendment and it became effective. The amendment altered, and in certain respects increased, the Tribal membership requirements. Following the effective date of the amendment, the Tribal Enrollment Committee applied that amendment to pending applications for Tribal membership, including this Petitioner’s application which was filed on August 23, 1999.
The Enrollment Committee reviewed the application for Suellen Svetich’s enrollment and denied the application because she did not meet the new Constitutional enrollment requirement that she have a parent who was a Tribal member at the time of her birth. Snellen’s mother, Petitioner, did not become a member of the Tribe until February, 1999. Petitioner was informed of the Enrollment Committee’s initial decision by letter dated March 9, 2000, signed by the Tribal Council Chairperson. Petitioner requested the Enrollment Committee reconsider its decision. The Committee met to consider the appeal of its initial decision by Petitioner and decided to uphold its earlier decision of denial. Petitioner was informed of the Enrollment Committee’s decision on reconsideration by letter date August 21, 2000, signed by Margo Merrier, Enrollment Coordinator. Petitioner then appealed the Enrollment Committee’s decision to this Court.
Petitioner claimed, as set forth above, that the Enrollment Committee’s decision was wrong. Petitioner has asserted her claims and reasons why she believes the decision was in error. The Court assures Petitioner that it has read the record, and carefully considered this case separately on its own merits. However, the Court has found a basis for remand with regards to one of Petitioner’s claims and therefore need not analyze Petitioner’s other claims.
III.STANDARD OF REVIEW
In these proceedings, the Court’s standard of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H).
IV.ANALYSIS
The many cases before the Court involve a myriad of facts and claims. As explained below, however, the Court has determined that the cases fall into two general categories: (1) those where the applications for enrollment were filed before the effective date of the Constitutional amendment, i.e. September 14, 1999, and (2) those where the applications were filed after that date. Applicants whose cases fall in the first category are entitled to a remand to the Enrollment Committee to allow the Committee to reconsider the applications under the terms of the former Constitutional requirements for Tribal membership. Those whose cases fall into the second category cannot prevail in this proceeding given the limitations on the Court’s scope of review and the deference to which the Tribe, its Tribal Council, and its Enrollment Committee are entitled.
*171 Retroactive application of Constitutional Amendment I. The reason for the distinction between those who are entitled to a remand and those who are not relates to the so-called presumption against retroactivity. The general rule is that, absent some affirmative evidence of a contrary intent, a change in the law or a new law is presumed to operate prospectively only. Charles Alan Wright and Kenneth W. Graham, Jr., 21 Federal Practice and Procedure, § 5124 at 591 (1977). See also Norman J. Singer, 2 Statutes and Statutory Construction, § 41:4 at 388 (6th ed. 2001) (“Retrospective operation is not favored by the courts and a law will not be construed as retroactive unless the act clearly, by express language or necessary implication, indicates that the legislature intended a retroactive application.”) The presumption applies to constitutional amendments, as well as to legislative enactments. Nelson v. Ada, 878 F.2d 277, 280 (9th Cir.1989).
The rule is based on a principle of fairness.
“[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than [the federal] Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the ‘principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.’” Kaiser [Aluminum, & Chemical Corp. v. Bonjorno], 494 U.S. [827], at 855, 110 S.Ct. 1570, 108 L.Ed.2d 842 [ (1990) ] (Scalia, J., concurring).
Landgraf v. USI Film Products, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Singer, 2 Statutes and Statutory Construction, § 41:2 at 377 (“It is a fundamental principle of jurisprudence that retroactive application of laws in usually unfair.”)
In determining whether a change in the law can operate retrospectively, a court’s “first task is to determine whether [those who enacted it] ha[ve] expressly prescribed the [new law’s] proper reach.” Id. at 280, 114 S.Ct. 1483. If those who enacted a new law have explicitly said that it should operate retroactively, then “there is no need to resort to judicial default rules.” Id.
“When, however, the [new law] contains no- such express command, the court must determine whether the new [law] would have retroactive effect, ie., whether it would impair rights a party possessed when he acted, increase a party’s liability for past conduct, or impose new duties with respect to transactions already completed. If the statute [or constitutional amendment] would operate retroactively, our traditional presumption teaches that it does not govern absent clear [evidence of] intent favoring such a result.” Id.
In these proceedings, the Court’s standard of review is limited. The Court can reverse or remand only if it finds that the Enrollment Committee’s decision was “arbitrary and capricious or a violation of Tribal Constitutional rights.” Enrollment Ordinance § (d)(4)(H). By definition, however, it is arbitrary and capricious to apply the wrong source of law — here the wrong constitutional provision — to a decision. See United Kingdom v. United States, 238 F.3d 1312, 1319 n. 8 (11th Cir.2001); United States v. Mietus, 237 F.3d 866, 870 (7th Cir.2001). The issue thus becomes whether the Enrollment Committee erred in apply *172 ing the new Constitutional amendment to applications that were filed before the amendment became effective.
The Tribe does not contend that anything in the new Constitutional amendment signaled, clearly or otherwise, that it was intended to operate retrospectively. Petitioner appears pro se. In similar contemporaneous cases before the Court, in which Petitioners are represented by counsel, and in which the claim is the same, the attorney’s have argued that in fact a contrary intent was signaled.[1] They rely on the official notice of the Constitutional election, to which a sample ballot was attached. That , sample ballot indicated that the amendment was designed “to increase requirements for enrollment” in the Tribe. The sample ballot then indicated that, “[i]f the proposed amendment passes, any application for Tribal enrollment submitted after the approval date of the amendment will qualify for enrollment in the Grand Ronde Tribe if * * Petitioner argues that the phrase “submitted after the approval date of the amendment” suggested that the amendment would apply only prospectively. The Tribe disagrees and contends that “[t]he notice simply provided one example of when the new Constitutional requirements would be applied and is silent as to the treatment of applications filed before the Constitutional amendment’s effective date,” but not processed until later.
The Court need not resolve this dispute to resolve this ease. Even if the notice is not taken as an affirmative sign of an intent to apply the new amendment prospectively only, nothing about the amendment evidences the opposite intention. That is, nothing suggests that the Tribal members who voted on the amendment intended that it would apply retroactively. Absent such affirmative evidence of intent, the “default” assumption is that the amendment does not apply retroactively. Landgraf, 511 U.S. at 272, 114 S.Ct. 1483.
The more difficult question is whether applying the new amendment to enrollment applications filed before the effective date of the amendment truly amounts to a “retroactive” application of the new law. In this context, “retroactive” or “retrospective” application is an imprecise term of art that reflects several concerns, such as whether a change in the law is substantive or procedural, but that is always grounded in concepts of fairness. Singer, 4 Statutes and Statutory Construction, § 41:4 at 399; Landgraf, 511 U.S. at 270, 114 S.Ct. 1483 (“The presumption against retroactivity has consistently been explained by reference to the unfairness of imposing new burdens on persons after the fact.”)
In arguing that the new amendment permissibly may be applied to enrollment applications filed before its effective date, the Tribe relies on several propositions. First, the Tribe suggests that the presumption against retroactive application arises only when “vested” rights are involved. That limitation might apply if this were a due process issue, but the presumption of retroactivity extends beyond that constitutional principle to any situation where it would be unfair to apply a law retrospectively to events that occurred or to proceedings that were commenced before the law’s effective date. See Landgraf 511 U.S. at 272, 114 S.Ct. 1483 (“while the constitutional impediments to retroactive legislation are now modest, prospectively remains the appropriate default rule”) (emphasis in original); Singer, *173 § 41:5 at 411-12 (presumption against ret-roactivity is not the same as due process constraints). “Vested” rights need not be involved in order for the presumption against retroactivity to apply. Landgraf, 511 U.S. at 275 n. 29, 114 S.Ct. 1483; Scott v. Boos, 215 F.3d 940, 947 (9th Cir.2000).[2]
The Tribe also emphasizes what it apparently views as being language of limitation in Landgraf and other similar cases. Relying on that language, the Tribe argues that “the presumption against retroactivity is not triggered.” The Tribe asserts that:
“Application of the Amendment to Petitioner’s pending enrollment application neither (1) impaired the rights Petitioner possessed when [he/she] acted because the Petitioner did not have a right to enrollment and did not acquire a right to enrollment at the time [he/she] filed [her/his] application; (2) increased Petitioner’s liability for any past conduct; or (3) imposed new duties with respect to transactions already completed because the filing of an enrollment application is not a completed transaction.”
Although the Tribe’s argument is based on language taken from Landgraf,[3] its argument isolates particular phrases and stresses those isolated bits of language, at the expense of the central teaching and the spirit of the decision. In that decision the court explicitly recognized that “[a]ny test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.” 511 U.S. at 270, 114 S.Ct. 1483. But the touchstone is fairness. Id, at 270, 114 S.Ct. 1483. See also TwoRivers v. Lewis, 174 F.3d 987, 993 (9th Cir.1999) (“the three factors” — listed above — “qualify as a ‘sufficient, rather than a necessary, condition for invoking presumption against retroac-tivity,’ ” quoting Hughes Aircraft. Co. v. United States ex rel Schumer, 520 U.S. 939, 947, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (emphasis in Hughes)). To determine fairness (and thus, retroactivity), rather than focusing on labels or isolated bits of text taken out of context, the Court must determine whether it is fair to apply the new Constitutional amendment to those who submitted their enrollment applications before the effective date of the amendment. For the reasons that follow, the Court determines that such an application of the new amendment simply would not be fair.
The distinction between procedural and substantive laws sometimes is used to distinguish between those laws that presumptively can and those that generally should not be, applied retrospectively. Singer, § 41:4 at 399. To the extent that distinction is an informative one, the new amendment here certainly is substantive. More significantly, “[r]egardless of whether a statute is ‘substantive’ or ‘procedural,’ it may not apply to cases pending at the time of its enactment if the new statute would prejudice the rights of one of the parties.” Chenault v. U.S. Postal Service, 37 F.3d 535, 539 (9th Cir.1994). In these cases, applying the new amendment manifestly would prejudice the rights of those who *174 applied before its effective date. The Tribe relies on a case holding that when an administrative rule is changed after an application is filed, the new rule may be applied. Pine Tree Med. Associates v. Secretary of HHS, 127 F.8d 118, 121-22 (1st Cir.1997). But an administrative rule is not a constitutional provision; one reasonably expects the latter to be considerably more permanent and to have considerably more stature and significance. Changing one is simply not the equivalent of amending the other.
The Tribe also cites Ortiz. v. INS, 179 F.3d 1148, 1156 (9th Cir.1999), and Talanoa v. INS, 397 F.2d 196, 200 (9th Cir. 1968). Those decisions appear to rely on a presumption in favor of retroactive application of changes in immigration law. That unusual assumption is contrary to the customary presumption, described above. In addition, the validity of that assumption appears particularly questionable after the United States Supreme Court’s recent decision in INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 2286-93, 150 L.Ed.2d 347 (2001) applying the usual Landgraf presumption against retroactivity in the context of an INS case.
In sum, although the question may be a somewhat close one and although its resolution is not free from all doubt, the Court is convinced that it would be unfair to change the rules that apply to those applicants who submitted their applications before the effective date of the new amendment. The Court finds the situation is akin to cases in which a statute of limitations is shortened after an action has been filed. In such a situation, the new shortened statute of limitations may not be applied retroactively because to do so would prejudice the plaintiff. See In Re Apex Exp. Corp., 190 F.3d 624, 642-43 (4th Cir.1999); TwoRivers, 174 F.3d at 993. Similarly here, applying the new, more-demanding, Constitutional requirements to applicants who filed before the new amendment became effective would unfairly prejudice them.
It follows that the new Constitutional amendment cannot be applied to Petitioner’s application because it was filed before the effective date of the amendment. Because the Enrollment Committee is entitled to reconsider those applications in the first instance under the former Constitutional enrollment requirements, Petitioner’s case is remanded to the Enrollment Committee. Petitioner may or may not ultimately be found to have met the requirements for membership in the Tribe. That decision is for the Enrollment Committee in the first instance, not for the Court.
IV. CONCLUSION
The Enrollment Committee’s decision to deny Petitioner’s enrollment application was arbitrary and capricious because the Committee applied the wrong law in making their determination.
IT IS HEREBY ORDERED:
This case is reversed and remanded to the Enrollment Committee for further proceedings not inconsistent with this opinion.

. The Court greatly appreciates the assistance of all the attorneys who have appeared in these cases, albeit that Petitioner is pro se in this case.

. The Tribe relies on a case that is based on a “vested rights" limitation. In Re Dos Cabezas Power District, 17 Ariz.App. 414, 498 P.2d 488, 492 (1972). Because the limitation does not apply in this context, the case is inappo-site and unpersuasive.

. “ ‘[E]very statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective . * * * ' " 511 U.S. at 269, 114 S.Ct. 1483, quoting Society for Propagation of the Gospel v. Wheeler, 22 F Cas 756, 767 (C.C.D.N.H. 1814).